FIRST NATIONAL BANK OF HIBBING v. A. C. SCHIRMER.[1]

November 10, 1916.

Nos. 20,016—(162).

**Bills and notes —guaranty of payment.**

1. Evidence *held* insufficient to sustain the defense that the guaranty of payment of the notes involved in the action was procured by the fraudulent representations of plaintiff.

**Principal and agent — implied authority.**

2. Implied authority of an agent includes such acts and only such acts as are incident and necessary to the exercise of the authority expressly granted.

**Same.**

3. An agent clothed with authority to accept promissory notes with the indorsement of the payee as security to a loan by his principal has no implied authority to contract with the indorser to pay the mortgage registry tax and to record an unassigned mortgage securing the payment of the same.

**Bills and notes — duty of creditor to guarantor.**

4. The indorsement, being in the form of a guaranty of payment, the law imposed no duty upon the creditor to pursue the maker of the notes, or to record a mortgage securing the payment thereof, not assigned to him, in protection of the guarantor.

[1]Reported in 159 N. W. 800.

Action in the district court for St. Louis county to recover $1,700 upon certain promissory notes. The facts are stated in the opinion. The case was tried before Hughes, J., and a jury which returned a verdict in favor of defendant. From an order granting plaintiff's motion for judgment notwithstanding the verdict, defendant appealed. Affirmed.

*Victor L. Power,* for appellant.

*D. T. Collins,* for respondent.

BROWN, C. J.

It appears from the pleadings and evidence in this case that at the time of the transaction in issue defendant was engaged in the plumbing and heating business at the city of Hibbing, with a branch establishment at Chisholm, a city not far from Hibbing, in St. Louis county. One Neally was engaged in the construction of a large hotel building at Chisholm, and defendant entered into a contract to install the heating plant therein. The contract was completed early in June, 1909, and the value of the labor, and of the material furnished by defendant, was agreed upon at $4,166. Neally was apparently without ready money and unable to pay in cash. Defendant understood this before entering into the contract, and he laid the matter before the president of plaintiff, and secured from him an agreement to discount Neally's promissory notes to be executed after the completion of the work, properly indorsed by defendant. On June 3, 1909, after the completion of the contract, Neally executed and delivered to defendant his several promissory notes for $200 each, aggregating the amount due under the contract, payable to defendant at the time stated in each. Defendant carried an account in plaintiff's bank at Hibbing, and also an account in the Miners' State Bank at Chisholm. He desired the proceeds of the notes to be deposited to his credit in the latter bank, and arrangements were made to that end. He presented the notes indorsed by him in blank, to that bank, and upon authority communicated from plaintiff they were accepted and defendant's account credited with the full amount thereof, namely, $4,166. Whereupon the Chisholm bank transmitted the notes to plaintiff, and was by plaintiff credited upon its books with the same amount. The Chisholm Bank had no pecuniary interest in the trans-

action, and the discount of the notes took this form for the convenience of defendant. There is no controversy about these facts. There was default on the part of Neally in the payment of the notes, and plaintiff insisted upon a series of new notes in denominations of $100 each, payable monthly, in place of the dishonored paper, and defendant agreed to procure the same. On December 15, 1910, defendant presented to plaintiff such renewal or new notes, all payable to defendant, and he indorsed upon each a guaranty of payment, waiving demand and notice of protest. Other renewals were made in 1911 and in 1912, in the same form, and bearing the same guaranty of payment and waiver of demand and notice of protest. Neally failed to pay the notes, and this action was brought to recover upon defendant's contract of guaranty. Defendant's liability on the original notes was that of an indorser in blank, but on the renewed notes was that of a guarantor of payment.

Defendant interposed in defense: (1) That the indorsement upon the renewal notes by which defendant became a guarantor of payment was procured by the fraud of plaintiff; and (2), that a mortgage given by Neally to secure the payment of the original notes was delivered with the notes when negotiated, which plaintiff agreed to have recorded, and negligently failed and neglected to do so, whereby defendant lost the security by reason of other mortgages being placed upon the property, the whole amount of which exceeded the value thereof.

The action was tried with a jury and a verdict was returned for defendant which, on plaintiff's alternative motion, was vacated, and judgment for plaintiff ordered notwithstanding the same. Defendant appealed.

It is contended by defendant: (1) That the question whether the indorsement of a guaranty of payment upon the back of the notes was procured by fraudulent representations was one of fact, that the verdict is supported by the evidence, therefore that the trial court erred in ordering judgment in plaintiff's favor; (2) that the evidence disclosed an express agreement on plaintiff's part to record the mortgage securing the payment of the notes, and that its failure to do so released defendant from his guaranty; and (3) that the obligation to record the mortgage for the protection of defendant was imposed upon plaintiff as a matter of legal duty, even in the absence of an express or implied agreement to

that effect. We dispose of these claims in the order stated. Neither requires extended discussion. The first and third may be considered together, for our conclusion as to the first necessarily disposes of the other.

1. Defendant is a business man of. some experience, and had dealt with plaintiff and carried an account with its bank for a number of years. He personally solicited plaintiff to discount the notes, and plaintiff agreed to do so upon the strength of defendant's general credit, and his indorsement of the paper. When the notes were renewed plaintiff insisted, so its officers testified, upon a guaranty of payment instead of the former blank indorsement. Defendant put this claim in issue, though he admitted that the guaranty indorsement was upon the back of each note when he wrote his name underneath the same. There is no claim that a change was made in the indorsement after it was signed, and no fraud arises from anything of that kind. The contention of defendant is that the officers of the bank represented to him that the indorsement was the same as upon the old notes. In this we discover no actionable misrepresentation. The form of the indorsement was before defendant, and it imposed upon him an absolute liability for the payment of the notes. The alleged misrepresentation amounted in substance to nothing more than a statement that defendant's liability was the same as under the former indorsement; a conclusion of law, therefore not a fraud. American Fruit P. Co. v. Barrett, 113 Minn. 22, 128 N. W. 1009. In any event it seems clear that defendant is in no position to insist that he was defrauded. He knew, at least was bound to know what he was signing. The documents were before him, and there is no suggestion either that he could not read, or that by any act of plaintiff he was prevented from reading the same. O'Gara, King Co. v. Hansing, 88 Minn. 401, 403, 93 N. W. 307; Cedar Rapids Nat. Bank v. Mottle, 115 Minn. 417, 132 N. W. 911; Ward v. Johnson, 51 Minn. 482, 53 N. W. 766, 38 Am. St. 515. The contract must therefore remain as written and signed by defendant. Being a guaranty of payment the liability is absolute and unconditional and imposed upon defendant the obligation to pay the notes upon the default of the maker. Such being the relation between the parties, plaintiff was under no implied legal duty to pursue the maker, or to record the mortgage for the benefit or protection of defendant. This is settled law in this state. Merritt v. Haas, 106 Minn. 275, 118 N. W. 1023,

119 N. W. 247, 21 L.R.A.(N.S.) 153; D. M. Osborne & Co. v. Gullikson, 64 Minn. 218, 66 N. W. 965; Hungerford v. O'Brien, 37 Minn. 306, 34 N. W. 161; 2 Notes on Minn. Reports, 1092. For this reason defendant's third contention is without force or merit and is not sustained.

2. This brings us to the only remaining question, namely, whether there was any evidence reasonably tending to show that an express agreement to record the mortgage was made by plaintiff or by someone authorized to act for it. It is assumed in this connection that if the agreement was made, that the failure of the bank to comply therewith would release defendant from further obligation under his guaranty, at least to the extent of the damage resulting therefrom. But we find no evidence that any such agreement was made, either at the time the original notes were delivered to the Chisholm bank, or at all. There is no claim that any officer of plaintiff made the alleged agreement to record the mortgage. In fact, there is no credible evidence that any such officer knew anything about the mortgage until after the commencement of the action. The mortgage was made to defendant as mortgagee, and bore the same date as the original notes, namely, June 4, 1909. It was not assigned to plaintiff, and it is quite clear that it never reached the hands of plaintiff or of any of its officers. The precise claim of defendant is that the cashier of the Chisholm bank, who accepted the notes in consummation of the original transaction, made the agreement to record the mortgage. Defendant's agent testified that the mortgage was delivered with the notes to the cashier, at which time the cashier promised to have the mortgage placed upon record. The cashier denied all the evidence in this respect, and declared that the mortgage never came into his hands. It may be conceded that, if the cashier of the Chisholm bank was authorized to act for plaintiff in the matter of recording the mortgage, the evidence made the question whether he did so agree one of fact for the jury. But we find from the record no such authority, either express or implied. There was no express authority. None is claimed, and it is clear that there was no implied authority. The recording of the mortgage was not a necessary part of the transaction, nor essential to its validity. The Chisholm bank had no express authority other than to accept the notes with defendant's indorsement, and extend to him credit for the face value thereof. It was not charged with any duty with respect to the

character of the security obtained, and clearly had no implied authority to contract with defendant to record the mortgage, for such an agreement was not necessary to an exercise of the authority expressly granted. And, moreover, the recording fee was not paid to the cashier, nor the mortgage registry tax. It would require quite a strain of the law of implied authority of an agent to hold on such a state of facts that the cashier of the Chisholm bank was clothed by implication of law with authority to assume and incur obligations of that kind. Defendant retained possession of the mortgage from its date, June 4, until the notes were delivered to the Chisholm bank, on June 19, and if the record thereof was by him deemed important, there was ample opportunity during the ensuing two weeks to pay the tax and record the same. But he failed to do so.

Order affirmed.