## CENTRAL STATE BANK v. HENRY HANSON.[1]

February 21, 1924.

No. 23,791.

**Unconditional guaranty of payment of note.**

1. Where a person unconditionally guarantees payment of a promissory note, the holder has the right to look to him for payment, and is under no obligation to resort to the security or to take steps to preserve it for his benefit.

**Bank cashier powerless to release guarantor of bank paper, when.**

2. The cashier of a bank, although its chief executive officer, is without power to release a guarantor of paper held by the bank where the bank receives no consideration therefor.

**Offer of evidence properly denied.**

3. An offer to prove that the cashier had agreed to release the guarantor and look to the security only, was properly rejected.

Action in the district court for Hennepin county to recover $1,553.29 upon 13 promissory notes. The case was tried before Leary, J., who when defendant rested granted plaintiff's motion for a directed verdict. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*McDonald & Ryan*, for appellant.

*William M. Nash* and *Chester L. Nichols*, for respondent.

TAYLOR, C.

Thirteen promissory notes executed to defendant by as many different persons were transferred to plaintiff bank and payment of each thereof was guaranteed by defendant. This action was brought on the guaranties. The court directed a verdict for plaintiff and defendant appeals from an order denying a new trial.

That the bank was the owner and holder of the notes and that defendant had guaranteed payment of them was admitted. The

[1]Reported in 197 N. W. 283.

only question presented is whether the court erred in excluding defendant's offer to prove the following facts: That the notes were secured by mortgage—one by a real estate mortgage, the others by chattel mortgages—upon property exceeding in value the amount of such notes; that when the notes were coming due he requested the bank, "to either sequester the security—collect on them— or let him collect on them;" that thereafter an official of the bank investigated the security and then informed him "that they would look to the security and that this defendant need not bother with the matter any further. That they would not allow him to take the security, but they would look after that themselves"; that on the following day he called up the bank by 'phone and the cashier reiterated the above statement in substance; that upon this assurance "defendant rested the offer of sequestration of the security"; that the bank failed to enforce any of the mortgages; and that the security, or at least the most of it, is now lost, for the reason that it consisted of livestock which has either died or been removed from the state.

Defendant having guaranteed payment of the notes unconditionally, the bank had the right to require him to pay them on default of the makers, and was under no obligation to resort to the security or to see that it was preserved for his benefit. Hungerford v. O'Brien, 37 Minn. 306, 34 N. W. 161; D. M. Osborne & Co. v. Gullikson, 64 Minn. 218, 66 N. W. 965; Merritt v. Haas, 106 Minn. 275, 118 N. W. 1023, 119 N. W. 247, 21 L. R. A. (N. S.) 153; First Nat. Bank of Hibbing v. Schirmer, 134 Minn. 387, 159 N. W. 800; Kleinman v. Sperry, 153 Minn. 447, 190 N. W. 604.

Defendant does not seriously question that such is the law in this state, but insists that the matters which he offered to prove would establish that the bank, through its investigating officer and the cashier, had agreed to look to the security and to release him from liability. It is by no means clear that the language used can be construed as constituting an agreement to release defendant from liability on his guaranties; but, assuming that such was the intention, it was beyond the power of these officers to bind the bank by such an agreement. The cashier of a bank is its chief

executive officer, but, if he exceeds his authority, his acts will not bind the bank.  3 R. C. L. 444 and citations.

"A cashier has no implied power, merely by virtue of his office, to give away, surrender, or release the bank's securities.  He can do no act which so operates.  When he does this he is outside the scope of his authority, and is acting not according to usage, practice, or usual course of business, but in plain disregard of the rights of the bank.  Unless specially empowered to do so, he is not authorized to release, otherwise than in due course of business and on payment, the makers of notes or other debtors of the bank, or to release sureties or endorsers."  3 R. C. L. 448, § 75, and citations.

There is no claim that the cashier had been clothed with any authority other than that ordinarily incident to his office, and no claim that the bank received any consideration for the alleged release.  The trial court ruled correctly and its order is affirmed.