## JOSEPH J. EARLY v. FARMERS STATE BANK OF GOODRIDGE.[1]

November 27, 1925.

No. 24,915.

**Defendant bank agreed to satisfy mortgage upon receipt of larger check.**
The evidence justified a finding that defendant agreed to satisfy a second mortgage it held on land plaintiff was buying, upon his turning over a check for more than enough to pay such mortgage, such agreement being made with the chief officer in charge of defendant's business, he directing how the check should be made and indorsed, and, as so indorsed, received it.

See Mortgages, 27 Cyc. p. 1425.

Action in the district court for Pennington county. The case was tried before Grindeland, J., who ordered judgment in favor of plaintiff. Defendant appealed from an order denying its motion for a new trial. Affirmed.

*J. M. Bishop, H. O. Berve, P. W. Mabey* and *H. O. Chommie,* for appellant.

*Drew & Cain,* for respondent.

[1]Reported in 205 N. W. 952.

HOLT, J.

Action to set aside the foreclosure of a mortgage and have the mortgage satisfied of record as paid. Defendant appeals from the order denying its motion for amended findings or a new trial.

The court found that on or about September 29, 1921, plaintiff purchased from Fred Duchamp and Lena Duchamp a 160-acre farm in Pennington county, on which was a first mortgage of $3,500 and a second mortgage of $1,000, the second mortgage being then held and owned by defendant; that at the time of the purchase defendant for a valuable consideration promised and agreed with plaintiff that it, the defendant, would forthwith satisfy, release and discharge its second mortgage; that defendant failed to keep its promise, foreclosing the mortgage and bidding in the farm at the sale on April 14, 1923. If the evidence sustains the above finding that defendant for a valuable consideration agreed to satisfy its second mortgage, the relief granted was right, and then the findings asked to the contrary were properly denied.

The record discloses that plaintiff, a farmer and stockraiser of Missouri, came to Pennington county, in the last days of September, 1921, for the purpose of buying a farm from one who would take live stock for part of the purchase price. He met the Duchamps, mother and son, and a tentative agreement to buy their farm was reached, but he was given to understand that defendant had a claim of $1,000 that would have to be satisfied before the deal could be closed. Plaintiff claims that at that stage he did not understand that there was a second mortgage. Fred Duchamp and plaintiff drove to defendant's bank at Goodridge to see the vice-president, Mr. Bundhund. After Fred Duchamp and Bundhund had conferred privately, plaintiff was informed that the $1,000 obligation bore 10 per cent interest and was about due and had to be taken care of. Plaintiff had understood that it ran 3 years at 7 per cent interest. He, therefore, proposed that since he could not have the time and interest intended, he would pay the cash if given a discount of $90, making $1,410 to be then paid, $3,500 by assuming and agreeing to pay the first mortgage, and $3,000 by delivering 12 Hereford cattle

and four horses, defendant to discharge and satisfy its mortgage. Mr. Bundhund and defendant's cashier, the only persons in charge of defendant's banking business, participated in the negotiations.

When this agreement with respect to the second mortgage was reached, Mr. Bundhund dictated to the cashier the contract of sale between the Duchamps and plaintiff. This contract was executed in the evening of September 29, and it was agreed that the next morning Mr. Bundhund would come with a deed prepared for the vendors to execute in fulfilment of the contract. This was done, and upon delivery of the deed plaintiff asked Mr. Bundhund to whom he should make the $1,410 check payable, and was advised that he should make it to Fred and Lena Duchamp and they would indorse it to defendant, so that there would be a record of the transaction. The check was thus made and indorsed, and then turned over to Mr. Bundhund. There were taxes unpaid, and some interest due on the first and second mortgages. Mr. Bundhund attended to the payment of the taxes. Plaintiff was evidently of limited experience in real estate transactions and relied on Mr. Bundhund to carry out the agreement to satisfy the second mortgage, and never knew to the contrary until the time for redemption from the foreclosure sale was about to expire. Plaintiff is corroborated by Fred Duchamp that Bundhund agreed with plaintiff to satisfy the second mortgage. He, however, says that he knew $1,410 paid by plaintiff was not enough to pay the taxes and interest and the second mortgage in full, but that he and Bundhund agreed that, for whatever was short, defendant should hold the chattel mortgage which also secured the same $1,000 indebtedness. It also appears that, as soon as the stock the Duchamps got from plaintiff arrived in Pennington county, defendant got a chattel mortgage on part thereof. We think the court upon the testimony outlined could find that plaintiff made the deal and turned over $1,410 upon defendant's agreement to satisfy and discharge of record its $1,000 second mortgage. True, defendant's vice-president and cashier denied the agreement, but it was for the trial court to determine which version was true.

But it is contended that an agreement to satisfy a mortgage without payment was beyond the powers of bank officers to make. Central State Bank v. Hanson, 158 Minn. 269, 197 N. W. 283, is cited to the proposition that bank officers may not give away or release without consideration the securities of the bank. It is not in point, for here the evidence justified the court in finding that to Bundhund, defendant's representative, plaintiff turned over a check of more than enough to pay the mortgage upon Bundhund's promise to satisfy it of record. That subsequently Bundhund permitted the fund to be diverted to other purposes under some secret arrangement with Fred Duchamp, should not affect plaintiff's rights. There can be no question about the authority of the chief executive officer in charge of the bank to bind the bank to satisfy this mortgage upon plaintiff parting with a consideration sufficient to discharge it, which consideration was then placed in the hands of such officer. The evidence justified the court in finding that Bundhund was such an officer, that he made the agreement with plaintiff under which the $1,410 check was given, indorsed by the payees and delivered to Bundhund. No special authority from the board of directors of a bank is required to satisfy mortgages that are paid, or for the payment of which funds are turned over to the one in charge of the bank. That would be routine business. The findings of the learned trial court are sufficiently supported by the evidence, and warrant the relief granted by the conclusions of law.

No abuse of judicial discretion is found in the denial of a new trial on the ground of newly discovered evidence.

The order is affirmed.