## STATE BANK OF MONTICELLO, BY ELMER A. BENSON, v. A. H. LAUTERBACH AND OTHERS.[1]

September 18, 1936.

No. 30,878.

*Junell, Driscoll, Fletcher, Dorsey & Barker, Kenneth M. Owen,*
and *Donald West,* for appellant.

*S. A. Johnson* and *Henry Spindler,* for respondents.

I. M. OLSEN, JUSTICE.

Appeal by State Bank of Monticello, by Elmer A. Benson, commissioner of banks, as statutory liquidator of that bank, from a judgment in favor of defendants.

There were two state banks in the small village of Monticello in this state, the State Bank of Monticello, plaintiff herein, which is hereinafter referred to as plaintiff, and the Farmers & Merchants State Bank, which is hereinafter referred to as the Farmers Bank. There had been a third bank in the village, which had gone into liquidation some time prior to the transaction hereinafter considered. Monticello has a population of about 1,000 people. Prior to and in 1929, it became apparent that, considering the limited field for the banking business at Monticello, it was desirable to have but one bank. There had been negotiations in 1926 for a merger of the three banks then in operation. One of the three closed in February, 1927, leaving the two banks above named. There were negotiations for the merger of the two remaining banks in 1927, but no agreement was reached. Early in 1929 negotiations were resumed and resulted in the taking over of the Farmers Bank by the plaintiff, by written agreements and documents, under date of May 18, 1929. The Farmers Bank thereupon ceased to do further banking business and closed.

The present action is brought to recover on a written guaranty agreement as to certain bills receivable, transferred by the Farmers Bank to the plaintiff, with recourse, in the transaction mentioned. The defendants, signers of said guaranty, were stockholders and some of them were the directors of the Farmers Bank. A number of them are local farmers.

The transaction between the two banks and between the plaintiff bank and these defendants is evidenced by three written instruments, all executed about the same time as part of the one transaction and dated May 18, 1929. There is, first, the transfer agreement between the two banks, whereby it is provided, at the outset:

"That in consideration of the premises, provisions, and covenants herein contained, the party of the first part [the Farmers Bank] hereby grants, bargains, sells and assigns to the party of the second part [the plaintiff] all the first party's Loans and Discounts, Stocks and Bonds, Cash on hand, moneys due from banks, bills receivable, accounts receivable, overdrafts, accrued interest, and all other claims and accounts receivable, banking books and records, but exclusive of its banking house, furniture and fixtures."

The liabilities of the Farmers Bank, here in question, amounted to $229,101.98, consisting of commercial and savings accounts, time certificates of deposits, and bills payable. These liabilities the plaintiff bank assumed and agreed to pay in consideration of the sale, transfer, and delivery to it of the assets of the Farmers Bank, before mentioned. These assets were accordingly assigned and delivered to the plaintiff. In the transfer agreement, however, were certain reservations and obligations remaining with the Farmers Bank, and some were contained in the guaranty agreement here to be considered. The consideration to the plaintiff bank for agreeing to assume and pay the liabilities of the Farmers Bank was the transfer of the assets mentioned, of the face value of slightly over $229,101.98. Of these assets the plaintiff bank accepted unconditionally and without recourse on anyone $143,077.46. To make up the balance of $86,024.52 necessary to pay the plaintiff $229,101.98, there was included in the sale and transfer something over $87,000 face value of bills receivable, and accounts and claims receivable of the Farmers Bank, which were sold and transferred to plaintiff "with recourse" on Farmers Bank, as provided in the transfer agreement. As collateral or security for the payment of said bills receivable, accounts, and claims transferred "with recourse," the Farmers Bank executed and delivered to the plaintiff its promissory note for $86,024.52, dated May 18, 1929, due in one year from its

date, with interest at the rate of six per cent per annum. The note has annexed to it the agreement hereinafter mentioned. It is provided in the transfer agreement that as items of these bills receivable and accounts transferred with recourse are paid, the amounts paid shall be endorsed on this note. The transfer agreement also contains a guaranty by the Farmers Bank of the prompt payment of the items so endorsed with recourse, and extensions and renewals thereof.

The agreement annexed to the note above mentioned recites that, for the purpose of securing payment of the note or any renewal thereof, the Farmers Bank has transferred to and deposited with the plaintiff bank "all Real and Personal Property described in item three of Exhibit A hereto attached." The exhibits printed or returned do not disclose what property is here referred to. There are other recitals in this agreement referring to the real and personal property mentioned. Not being informed as to the property involved, we assume these recitals are not important.

The third document in the transaction, the one on which this action is brought, is a guaranty given, not by the Farmers Bank but by the individual defendants. It is a separate instrument and recites in part that, pursuant to the agreement between the two banks, the signers of the guaranty—

"guaranty to the State Bank of Monticello that they or any one of them will pay the said State Bank of Monticello any deficiency which may arise under the terms of said agreement in the liquidation of the items appearing in Schedule B endorsed 'with recourse' and in Schedule C as to portions of items endorsed 'with recourse' the amount of which is represented by the 'Collateral Note' in said agreement provided, and said deficiency to be ascertained and determined by the balance due on said 'collateral note' pursuant to the terms of said agreement, at the end of three years from the date hereof, this guaranty then to be due and enforcible for such deficiency, and we agree to pay all costs and expenses in collecting under this guaranty, including Attorney's fees."

The items so referred to are the bills receivable and accounts of some $87,000 endorsed "with recourse" hereinbefore mentioned.

There are the following other provisions in this guaranty:

"It is agreed that the State Bank of Monticello shall not be required to first proceed against or exhaust its remedies against the Farmers and Merchants State Bank of Monticello under the terms of said attached agreement, or against any makers, endorsers or guarantors, or any of the demands, obligations or securities to the guaranty.

"The parties hereto do hereby obligate themselves jointly and severally to pay said State Bank of Monticello, on verbal or written request any and all sums due or owing to said State Bank of Monticello hereby guaranteed, the same as if this were the direct and primary obligation of the undersigned."

Payments of $19,000 on principal and $9,300 on interest are credited on the $86,024.52 note. The last credit is under date of September 12, 1931. This was some eight months before the guaranty matured. The plaintiff bank closed in July, 1932, and was taken over by the commissioner of banks.

The court made the following findings of fact on which it based its conclusion that plaintiff was not entitled to recover:

"That in said agreement the State Bank of Monticello assumed and agreed to pay—inter alia—the savings accounts of the Farmers & Merchants State Bank of Monticello in the sum of $43,086.40. That the State Bank of Monticello failed, refused and neglected to either assume or pay a large number of savings account depositors of said Farmers & Merchants State Bank of Monticello, in the aggregate sum of about $10,000, and these defendants as such said stockholders are still liable to respond to said depositors for said savings accounts. The said State Bank of Monticello is now disabled to further perform said agreement in assuming and paying said savings accounts, in that because of insolvency in July, 1932, it was closed and taken over by the commissioner of banks for liquidation. That said bank is now in process of liquidation and will pay only a small fractional portion of its obligations.

"That it was the duty of the State Bank of Monticello under the law and under the agreements above set out and under the evidence

in this case, to use all reasonable efforts and diligence to collect and secure the notes sold it by the Farmers & Merchants State Bank and to apply the proceeds of such bills receivable in reduction of the note above set out in paragraph 2 of these findings. That the State Bank of Monticello failed and neglected to use such diligence or to make such efforts so to do, and as a result thereof great loss and damage has been suffered by these defendants."

These findings are challenged on several grounds. As to the finding that plaintiff has failed to pay some $10,000 of savings accounts assumed and agreed to be paid, plaintiff practically concedes nonpayment of at least that amount. It does claim that some of these depositors had savings accounts in plaintiff bank and thereafter deposited sums in said savings account and made withdrawals therefrom, and that treating the accounts taken over from the Farmers Bank as part of its own savings accounts and applying withdrawals under the rule of "first in first out" would result in some reduction of the Farmers Bank savings accounts found not to have been paid. The evidence as we view it is not sufficient to require the court to apply these withdrawals upon the accounts taken over from the Farmers Bank, and the finding of the court that there was such nonpayment is sufficiently sustained.

It is claimed that by treating these accounts as its own accounts, with the consent or without the objection of the owners thereof, there resulted a novation whereby the Farmers Bank was relieved from liability thereon. The owners of these accounts were not parties in this suit. What they may have to say about the question of novation does not appear. No release by them of the Farmers Bank is shown. As said in State v. Wood, 173 Minn. 406, 408, 217 N. W. 360, 361:

"To constitute a novation of parties as to the debtor, there must be an extinguishment of the debt or liability as against the original debtor and the shifting of the obligation to a new debtor by mutual agreement between all parties. * * * The substitution must be explicitly expressed and assented to by each of the three parties."

See also Cornwell v. Megins, 39 Minn. 407, 40 N. W. 610; Hanson v. Nelson, 82 Minn. 220, 84 N. W. 742.

The evidence in the present case is not sufficient to require or sustain a claim of novation.

■ As to the finding that the plaintiff owed defendants a duty to use all reasonable efforts and diligence to collect and secure the bills receivable here in question and that it failed so to do, whereby great loss has resulted to defendants, plaintiff urges that the oral testimony tending to show that this duty rested upon it, and that it had agreed so to care for this paper, was erroneously admitted and that without such evidence the finding is not sustained. The specific objection is that the evidence tended to vary the terms of the written instruments here involved. Defendants' contention is that the written documents are ambiguous on this point; that the facts and circumstances shown to exist at the time, in connection with the recitals contained in the documents, create such ambiguity as to permit oral evidence on this question.

As already noted, the Farmers Bank sold and delivered to the plaintiff bank all of its bills receivable and assets except its banking house, furniture, and fixtures. These bills receivable and assets plaintiff has ever since retained, except such bills receivable as have been paid by and returned to the makers thereof, and such cash and other items as it has made use of as its own. If nothing further appeared, the fair inference would be that the parties intended the plaintiff to use the same diligence and efforts in collecting this paper or renewing and securing it as would ordinarily be used by a bank in collecting, renewing, and securing its bills receivable. The Farmers Bank went out of business and left the banking field to the plaintiff.

The guaranty is expressly made "pursuant to the terms of" the transfer agreement. As already noted, the guaranty is that the makers will pay any deficiency that may arise under the terms of the transfer agreement in the liquidation of the bills receivable endorsed by the Farmers Bank with recourse, such deficiency to be ascertained at the end of three years from the date of the guaranty. Nothing is said in the guaranty as to who shall collect or liquidate the bills receivable. There is no express provision in the transfer agreement as to who shall look after the ordinary duties of collect-

ing, renewing, and securing the paper. It seems improbable that these defendants would guarantee the deficiency without some knowledge or assurance that someone was to look after and make efforts to collect this paper. The Farmers Bank, parting with both the title and possession of the paper and going out of business, was not in a position to handle the paper efficiently. The plaintiff, having title to and possession of the paper, was at least the proper party to look after the collection of the paper and renewals and securities for same. In the transfer agreement it is provided that plaintiff agrees to employ J. W. Pribyl, the then cashier of the Farmers Bank, for the immediately succeeding two months at a salary of $165 per month, or for such longer time and on such terms as may be agreed upon, and plaintiff agrees to permit Pribyl and H. S. Whipple, as representatives of the Farmers Bank, at any time to examine the paper in question and the securities therefor. Pribyl was so employed by plaintiff for a period of some over two months. During that time he did look after the paper transferred by the Farmers Bank and endeavored to collect and renew. What amount was collected during that time is not shown. While Mr. Pribyl, during the time he was employed by plaintiff, devoted part of his time to familiarizing plaintiff's officers and employes with the paper and the situation of depositors of the Farmers Bank generally, the fact that he devoted much time also to the efforts to collect and renew the bills receivable transferred with recourse, as part of his employment, indicates that plaintiff at that time recognized a duty on its part to make efforts and exercise diligence in the collection and renewal of such paper.

Another provision of the transfer agreement is that, in the event it became necessary or advisable, in the opinion of the Farmers Bank, to foreclose or sue on any item of these bills receivable, that bank would pay the costs, expenses, and attorney's fees of such foreclosure or suit, and that the plaintiff agreed to institute such suit or proceeding and execute any necessary power of attorney therefor. In other words, the plaintiff was to foreclose or sue, but the Farmers Bank was to pay the expense. If the plaintiff bank was to be under no obligation to make efforts to collect, renew, or

care for the paper, such provision was superfluous. It would have been easy to say, in so many words, that the Farmers Bank was to care for and collect and renew this paper instead of saying merely that Pribyl and Whipple were to have the opportunity to examine the paper at any time, and that, if the Farmers Bank deemed it necessary, the plaintiff would foreclose or sue on items of this paper at the expense of the Farmers Bank. The plaintiff having title to and possession of the bills receivable, the Farmers Bank and its former officers had no right to do anything with this paper unless authorized so to do by the plaintiff.

Due consideration has been given to the two paragraphs of the guaranty agreement quoted by plaintiff's counsel in their brief. They have already been quoted herein and need not be repeated. Counsel also quote from First Nat. Bank v. Schirmer, 134 Minn. 387, 159 N. W. 800. In that case there was a simple and direct guaranty of payment endorsed on the notes. In the present case the guaranty is to pay any deficiency arising from the liquidation of commercial paper owned by the plaintiff and, inferentially, to be by plaintiff properly handled and liquidated, and the guaranty is made pursuant to the sale and transfer agreement, to be construed in connection with the guaranty.

From a consideration of the written instruments here presented and the facts and circumstances shown to exist at the time of the transaction in relation thereto, there appears sufficient ambiguity and doubt as to which party was charged with the duty of collecting and liquidating the bills receivable here involved so that oral evidence on that question was properly received.

■ It is urged that this was an absolute guaranty of payment and that consequently no duty rested upon the plaintiff to make efforts to collect the bills receivable in question. What has already been said sufficiently covers that point.

■ It is argued that the evidence is insufficient to sustain any finding that plaintiff failed to exercise proper diligence and care and to make proper efforts to collect the bills receivable; further, that the evidence fails to show any loss incurred on that account. As already stated, payment of $28,300 out of $87,000 of these bills

receivable is all that is credited or shown. The last payment was on September 12, 1931, some eight months before the guaranty matured. This action was commenced sometime early in 1933. There remained after that payment some $59,000 of these bills receivable. Up to September 12, 1931, the collections had averaged $1,000 per month. Why the sudden ending of collections during the period of approximately a year and three months up to the commencement of this suit? There is oral evidence tending to show lack of efforts to collect or care for the paper. True, there is no direct evidence as to the amount of loss. But the court could reasonably find that there had been substantial or great loss.

■ The plaintiff urges that there has been substantial performance on its part of all its agreements and that the nonpayment of savings accounts, in the amount found, if sustained, could and should be credited in reduction of recovery by plaintiff. The courts are not in accord as to when the rule of substantial performance applies or does not apply. It is quite generally applied in cases involving building and construction contracts. It is given a much more limited application in cases involving other contracts, depending upon the fact situation in each case. The nature and amount of the default or nonperformance are important factors. In commercial contracts strict performance seems to be required. Norrington v. Wright, 115 U. S. 188, 6 S. Ct. 12, 29 L. ed. 366. In order that an exception to the general rule requiring strict performance may be recognized there must have been an attempt in good faith to perform; there must be no wilful or intentional failure to perform. 13 C. J. p. 692, cases cited in notes 92 and 93. The nonperformance of a material and substantial part of the contract will not sustain a holding of substantial performance. 13 C. J. p. 692, cases cited in note 95.

■ The findings of the trial court are that there was failure to perform two material and substantial parts of plaintiff's contract obligations. The evidence sustains these findings, and substantial performance is not established.

Plaintiff's counsel call attention to some alleged inconsistent findings of the trial court. These findings have been considered.

We do not find that the apparently inadvertent differences of language used in different parts of the findings in any way affected or qualified the decisive findings in the case or the decisive issues presented to this court.

The conclusion reached is that the two findings of fact herein considered are sustained by the evidence and decisive of this case, and that the conclusions of law are sustained by these findings.

We note that there was a denial of a motion for judgment on the pleadings and denial of a motion to strike out the answer. These motions were properly denied.

The judgment appealed from is affirmed.

STONE, JUSTICE (concurring in the result).

But one transaction is involved, and the resulting written contracts, all executed and effective simultaneously, should be construed as one. In that view, the guaranty of the defendants was properly construed as a covenant dependent upon those entered into by the State Bank, the real plaintiff here. The latter, having been guilty of a substantial breach, has no cause of action against defendants for their subsequent breach. The substantial nonperformance by plaintiff was, in my judgment, sufficient alone to excuse further performance by defendants. That appears to me to be enough to sustain the judgment.

Because consideration of the point seems unnecessary to our decision, I prefer not to say anything concerning the oral evidence received as a supposed aid to construction. It is clear that the guaranty was not one of payment. The undertaking was to make good only the deficiency. What deficiency? Obviously that remaining after plaintiff's failure to collect in the usual course of banking practice in the community. Plaintiff did not take over the bills receivable of the Farmers Bank as an independent transaction. Rather it bought them for the purpose of integration with its own banking business. To my mind, the conclusion follows without aid from extraneous matter that plaintiff was under the duty to exercise a degree of diligence commensurate with the circumstances.

Of course the contractual language relied upon by appellant, if considered in isolation, might lead to a contrary result. But it is not to be considered alone. It must be put under the light of all of the writings and especially their purposes. The main purpose was to enable plaintiff to continue the banking business in Monticello. A subsidiary purpose was that defendants should be liable for the deficiency already mentioned. Such being the purposes, there is no language in the contract susceptible, in any proper view of the case, of the interpretation that plaintiff was relieved from all obligation to effect collection of the paper it took over from the Farmers Bank.