## WILLIAMSON, Ex'x, et al. v. OLIPHANT.

No. 11547—Opinion Filed Jan. 24, 1922.

(Syllabus.)

**1. Appeal and Error—Review—Sufficiency of Petition.**

A petition unchallenged by demurrer or motion, and against which no objection is raised by objecting to the introduction of testimony, will, when its sufficiency is questioned for the first time in a motion for a new trial, or in this court on appeal, be held good if by a liberal construction it states, even though somewhat defectively, a cause of action in favor of the plaintiff and against the defendant; and such objection should not be sustained, unless there is a total failure to allege some matter essential to the relief sought, nor when the allegations are simply incomplete, indefinite, or conclusions of law.

**2. Limitation of Actions—Action Based on Fraud—Time of Discovery of Fraud.**

In an action brought on the 27th of June, 1916, for damages for fraud on the part of defendants in inducing the purchase by plaintiff in the years 1908 and 1909 of certain shares of stock of an insurance company, by reason of the representations of defendants that they had subscribed for shares sufficient to increase the capital of said company to $100,000, where the books and records of the company disclosed that the capital stock had been increased to $100,000 and securities deposited by defendants amounting to $150,000 to secure the payment of notes executed by defendants for said shares, an allegation in the petition, "that said defendants and each of them, in July, 1914, stated to this plaintiff and testified in a suit then pending in the district court * * * that they and each of them did not subscribe for and purchase said stock or any part thereof, in manner and form as before stated, or in any other way, and did not owe said insurance company anything therefor, and was not indebted to said insurance company for said sum of money or any part thereof, at which time, in July, 1914, was the first time plaintiff heard and knew said defendants had denied they subscribed for, owned, and held the $79,000 in said insurance company as aforesaid alleged herein," held sufficient to bring the case within the provisions of the statute of limitations, under paragraphs 3 of section 4657, Rev. Laws of Oklahoma, 1910.

Error from Superior Court, Tulsa County; L. J. Martin, Judge.

Action by John A. Oliphant against John O. Mitchell and George T. Williamson for damages for fraud. Judgment for plaintiff, and defendants appealed. Upon death of George T. Williamson, cause revived against plaintiff in error Mary Lyon Williamson, executrix. Affirmed.

Charles O'Connor and Allen K. Swann, for plaintiffs in error.

George E. Reeves, for defendant in error.

PITCHFORD, V. C. J. This action was commenced by John A. Oliphant, plaintiff below, against John O. Mitchell and George T. Williamson, defendants below, for damages in the sum of $5,587.50, resulting, as alleged, in the purchase by plaintiff in the years 1908 and 1909 of certain shares of stock in the Merchants & Planters Insurance Company, which purchase, it was alleged, was induced by the fraudulent representations made to the plaintiff by the defendants.

The chief alleged fraudulent representation relied upon is that the defendants represented to plaintiff that the paid-up capital of the said Merchants & Planters Insurance Company would be increased to $100,-000, and that they, the defendants, had arranged to, and had subscribed for, and pledged themselves to pay for the amount of stock necessary to cause said company to have a fully paid-up capital of $100,000. It is alleged, further, that said representations were false and fraudulent, and that plaintiff did not discover the fraud until July, 1914, at which time defendants denied they had subscribed for and agreed to take said stock.

The instant action was commenced on the 27th day of June, 1916, by filing in the superior court of Tulsa county the petition herein. Upon trial of the issues, the jury returned a verdict in favor of plaintiff and against the defendants in the sum sued for. Thereafter, and in due time, defendants filed their motion for new trial, which was overruled.

Defendant George T. Williamson departed this life after the overruling of motion for new trial, but before the extension for making and serving case-made had expired. The cause as to the deceased, George T. Williamson, was revived in said superior court against the plaintiff in error Mary Lyon Williamson, as executrix of the last will and testament of George T. Williamson, deceased, and the cause is brought here by the said Mary Lyon Williamson, as said executrix, and John Mitchell, as plaintiffs in error. Defendant John O. Mitchell departed this life on the 1st day of July, 1921. The cause as to defendant John O. Mitchell was revived in this court against Young O. Mitchell, as administrator of the estate of John O. Mitchell, deceased. Hereafter, for convenience, the parties will be referred to as plaintiff and defendants, being the positions respectively occupied in the trial court.

The defendants rely for reversal of the judgment of the trial court solely on the proposition that, under the statute of limitations of Oklahoma covering actions on deceit and fraud, where the petition shows on its face that the fraud complained of occurred prior to two years before the action was begun, it is necessary that the plaintiff in his petition allege, and in his proof sustain his allegation, that the fraud was not discovered prior to the two-year period, and that he used and excised reasonable diligence to discover said fraud.

Paragraph 3 of section 4657, Rev. Laws of Oklahoma, 1910, provides that an action for relief on the ground of fraud shall be brought within two years; that the cause of action in such case shall not be deemed to have occurred until the discovery of the fraud.

We have carefully read plaintiff's petition, and are of the opinion that, taking the allegations of the petition in connection with the evidence of the case, there is nothing to show that the plaintiff failed to act with diligence in discovering the alleged fraud. He testified concerning the conversations he had with the defendants, and of their representations relative to the number of shares for which they had subscribed. The records of the company disclosed that the defendants voted the number of shares for which they claimed they had subscribed, and that they had executed their notes, respectively, for shares necessary to increase the capital stock to $100,000. There is no conflict in the evidence showing that defendants had turned over to the insurance company collateral of the approximate value of $150,000 ostensibly to secure the payment of the stock subscribed by them. When the affairs of the company were examined by the State Insurance Examiner, his report was that the affairs of the company were in excellent shape.

It is in proof that the plaintiff had in his possession, as treasurer of the company, and delivered to his successor, a receipt executed by George T. Williamson, as his

predecessor, for the note of Williamson in the sum of $26,976.24, dated December 31, 1909, and the collateral for the payment thereof, consisting of 1,000 shares of Tulsa Commercial Bridge Company stock, and in which Williamson receipted for the note of his co-defendant, John O. Mitchell, in the sum of $54,000, and the collateral for the payment thereof, consisting of 445 shares of Barnes Oil Company stock. The defendant Williamson, when he turned over the papers, securities, etc., to his successor, was interrogated by Mr. Oliphant as to these notes evidenced by the above receipt. Mr. Williamson gave an evasive answer, but informed Mr. Oliphant that they would turn up. The Barnes stock and the Bridge stock, however, were received by the plaintiff, as treasurer, and by him turned over to Mr. Harn, the receiver of the company.

We have examined the entire evidence as contained in the briefs of the respective parties, and nowhere have we been able to find where, prior to the action of the receiver against the defendants, they ever denied the fact that they had subscribed for stock sufficient to increase the capital stock to $100,000, or where they ever denied that the security consisting of the Barnes stock and the Bridge stock had been turned over to the insurance company to secure the payment of the stock so subscribed by them.

The following rule is laid down in Ruling Case Law, vol. 17, p. 997, section 375:

"Where an action is brought to recover damages alleged to have resulted to the plaintiff in consequence of the perpetration of a fraud by the defendant, the cause of action, as stated in the declaration, being apparently barred by the statute of limitations, and it being sought to relieve such action of the bar of the statute by alleging that it was brought within the statutory period after the discovery of the fraud, if it does not appear from the petition that the plaintiff used proper diligence to discover the act complained of, it has been held that the petition should be dismissed upon appropriate demurrer thereto."

In the case at bar, we are unable to understand how it would be possible for the plaintiff to exercise or use any greater diligence than he did use. The same facts that caused him to believe that the stock had been subscribed for as represented by the defendants, had the effect of inducing the Insurance Commissioner to certify that the amount of capital paid up in cash was $100,000, and that everything was regular. If the plaintiff, in his petition, had alleged that he used diligence in trying to discover the fraud, his statement would

have been a mere conclusion. What facts could he allege as indicating diligence in the premises? The only means by which he could have discovered whether or not there was fraud and deceit would have been to go in person to defendants and say to them: "I was present when you voted 640 and 420 shares of stock, respectively; I have seen the receipt for your notes representing the purchase price of this stock; I know that the security has been delivered to the insurance company to secure payment of these notes; I have had the security turned over to me, as treasurer, but I want to know whether or not you have honestly and in good faith made this subscription, and have hypothecated this security to secure the payment of the shares purchased; whether or not you have done all these things for the purpose of deceiving, not only the public, but also for the purpose of practicing a fraud in attempting to get into the states of Texas and Kansas under a false showing." Our opinion is that the plaintiff was not required to go to this length. When the defendants made the representations claimed by the plaintiff to have been made, he was justified under the evidence in believing them true until denied in some way by the defendants. The petition filed by plaintiff was not challenged by demurrer or motion; no objection was raised thereto by objecting to the introduction of testimony. Even in the motion for new trial no question is raised as to the sufficiency of the petition. This objection seems to have been raised for the first time in this court on appeal.

In Hall v. Bruner et al., 36 Okla. 474, 127 Pac. 255, the first paragraph of the syllabus is as follows:

"A petition unchallenged by demurrer or motion, and against which no objection is raised by objecting to the introduction of testimony, will, when its sufficiency is questioned for the first time in a motion for a new trial, or in this court on appeal, be held good if by a liberal construction it states, even though somewhat defectively, a cause of action in favor of the plaintiff and against the defendant; and such objection should not be sustained, unless there is a total failure to allege some matter essential to the relief sought, nor when the allegations are simply incomplete, indefinite, or conclusions of law."

In the case of Maddox v. Smith, 46 Okla. 678, 148 Pac. 842, the first paragraph of the syllabus reads as follows:

"In an action brought on the 20th day of May, 1911, for damages for fraudulent conversion of property on the 7th day of

April, 1908, an allegation in the petition that 'plaintiff did not discover said fraud, and that said M. had fraudulently converted plaintiff's cattle until the 1st day of October, 1910,' is sufficient to bring the case within the provision of the statute of limitations (section 4657, Rev. Laws of 1910); the statute having regard to the time of the discovery of the fraud, and not to the manner of such discovery."

In Alexander v. Cleland, 13 N. M. 524, 86 Pac. 425, the first paragraph of the syllabus reads as follows:

"A demurrer based on the statute of limitations (sections 2916 and 2918 of the Compiled Laws of 1897), where the complaint alleges fraud, is not well taken, where the complaint alleges that 'it was not until about the month of July, 1902,' that the plaintiff learned of the fraudulent claim of the defendant, and the complaint was filed on November 24, 1903, as the statute of limitations of this territory provides that actions for relief on the ground of fraud shall be brought within four years and the cause of action shall not be deemed to have accrued until the fraud is discovered by the party aggrieved."

In the body of the opinion it is said:

"As in this case the complaint alleges that 'it was not until about the month of July, 1902', that the plaintiff learned of the fraudulent claim of the defendant to be the absolute owner of the real estate in controversy, it seems to be apparent that the statute did not begin to run 'until about the month of July, 1902', and as the complaint was filed on November 24, 1903, it is within the statutory period, and this ground of demurrer should have been overruled."

On September 15, 1910, A. B. Harn, as receiver for the insurance company, brought suit against John O. Mitchell, as defendant, to recover $54,000, the balance claimed to be due on the stock of the insurance company held by Mitchell. To this petition, Mitchell, on December 2, 1912, filed an answer in which he denied that he had subscribed the amount of stock claimed in the petition filed by Harn, but claimed that he had only bought 20 shares; and, further, that the 445 shares of the Barnes Oil Company stock had been loaned to the insurance company. The receiver also filed an action against Williamson on January 16, 1911, at Tulsa, Okla., seeking to recover $26,976.-24 for the shares, balance due, purporting to have been subscribed for by Williamson. On October 31, 1912, Williamson filed an answer to the petition of the receiver in which he denied that he had purchased the amount of stock sued for; alleging that he purchased only 20 shares, for which he had paid in full, and that he had loaned the

1,000 shares of the Tulsa Bridge Company's stock to the insurance company.

The trials of the cases of Harn, receiver, against Mitchell and Williamson appear to have terminated prior to January, 1913, and resulted in mistrials. The plaintiff, Oliphant, was a witness for the defendants in those cases, the trial of which consumed something like six days.

It is now strenuously contended by the defendants that, the plaintiff being a lawyer, and having been employed by the defendants to go over the books and ascertain the true condition of the records of the insurance company, and being a witness in the cases, and as their respective answers contained the denial that they had subscribed for this stock, with the use of ordinary diligence he could have discovered that they were denying liability, and that he should have known at that time what he claimed not to have discovered until July, 1914. The plaintiff testified that he never read the answers; that he did not know at that time that the defendants were denying their liability on the grounds contained in their respective answers; that he understood their defenses to be that the insurance company had used fraud and deceit in securing their subscriptions.

The defendants further contend that their answer filed to the action prosecuted against them by the receiver was constructive notice, and that plaintiff's failure to discover the contents of the answer so filed was a failure to use proper diligence upon his part. We are of the opinion that the pleadings in litigation between private parties should not be held to give constructive notice of the contents thereof to anyone, except a party to the litigation, except in a case of subsequent purchaser in litigation. The only theory upon which the pleadings or judgment in an action involving the property rights of the litigants are constructive notice of any kind is that of lis pendens, and lis pendens is only notice to persons undertaking to acquire an interest in property in litigation, to the extent that they take said property or interest therein subject to the outcome of the litigation. We cannot understand how judicial proceedings could be constructive notice to a person not a party to the action, and who acquires no interest in the property in litigation subsequent to the institution of the action.

In Marshall v. Shepard, 23 Kan. 321, in discussing the doctrine of lis pendens and the notice imparted by judicial records, the court uses the following language:

"The doctrine of lis pendens also requires that all persons, whether parties to the suit or not, shall take notice to some extent of judicial proceedings. This doctrine, however, applies only in cases where the suit is about some specific piece of property, and then only to the extent of preventing a purchaser pendente lite from acquiring any interest in the thing in litigation, to the prejudice of the adverse party. Civil Code, p. 81; Wade, Notice, c. 5, pp. 337-377. And in no case is a person, not a party to the suit, bound to take notice of judicial proceedings further than to prevent him from acquiring an interest in the thing covered by the litigation."

In Guaranty State Bank of Okmulgee v. Pratt et al., 72 Oklahoma, 180 Pac. 376, the third paragraph of the syllabus is as follows:

"The theory of lis pendens is to keep the subject-matter of controversy within the power of the court until the final judgment is rendered, so that the judgment, when rendered, may be effective. A party to the litigation cannot transfer the property in issue so as to prejudice the rights of the plaintiff therein. The title of a pendente lite purchaser is not necessarily void. As between the parties to the transfer, the title is valid, but, as to the pendente lite purchaser, its validity depends entirely on the result or outcome of the pending litigation. While the purchaser must take notice of the facts contained in the record, he is only affected to the extent to which the judgment in the suit goes."

The fact that the plaintiff was a witness in the cases filed by the receiver against the defendants would not by itself be any evidence that he was present in court when the testimony of the defendants was given in those trials. There is evidence, however, in the record that the plaintiff did not hear their testimony, and that he was under the impression that their defense to the actions brought by the receiver was on an entirely different theory. It was for the jury to say under all the evidence whether or not the plaintiff used or failed to use due diligence in discovering the fraud prior to July, 1914; or whether or not he had knowledge of such facts as would be sufficient to put a reasonable person upon inquiry. The instructions of the trial court, to which there were no exceptions, fully and fairly submitted the issues of the respective parties to the jury. In addition to the instructions. there was submitted to the jury a special interrogatory, as follows:

"You are instructed that if you find for the plaintiff. to answer the following interrogatory: Did the plaintiff at any time prior to June 27, 1914. which was two years prior to the time of the commencement of this action, know, or by the exercise of reasonable diligence could he have known, or was he in possession of sufficient facts to put him upon inquiry, so that he, by the exercise of reasonable diligence, could have discovered the fraud and deceit practiced by the defendant? Answer: No."

As we have stated before, the main contention of defendants for reversal being that of the statute of limitations; and the court and jury having found that the same was tolled by the fact that the plaintiff did not discover the fraud until July, 1914, and that this action was instituted before the same was barred, we conclude that the judgment of the trial court should be affirmed, and it is so ordered.

KANE, JOHNSON, ELTING, and KENNAMER, JJ., concur.