## HALL et al. v. SMITH.

No. 17865.   Opinion Filed July 26, 1927.

Rehearing Denied Sept. 27, 1927.

(Syllabus.)

**1. Pleading—When General Demurrer to Petition Properly Sustained.**

A general demurrer to a petition, on the grounds that the facts stated are insufficient to constitute a cause of action, may be sustained only where the petition is so defective that the court is authorized, taking all of the facts to be admitted, in concluding that no cause of action is stated entitling the plaintiff to any relief.

**2. Appeal and Error—Questions of Fact—Conclusiveness of Verdict—Existence of Fraud.**

When fraud is properly alleged upon the one hand and denied upon the other, the existence or nonexistence of such fraud becomes a question of fact for the jury to determine under proper instructions, and upon appeal, the verdict of such jury upon such facts will not be disturbed by this court, if there is any evidence reasonably tending to support such findings.

**3. Same—Limitation of Actions—Burden of Proof of Defense.**

Where the statute of limitations is pleaded as an affirmative defense, the burden of proving it is on the one who asserts it, and where the evidence is conflicting as to whether or not the statute of limitations has run, the finding and verdict of the jury thereon will not be disturbed on appeal, if there is any evidence reasonably tending to support such verdict and finding.

**4. Evidence—Fraud—Acts and Statements of Coconspirators in Scheme.**

Where two or more persons enter into a scheme for the purpose of perpetrating a fraud upon another, all of the acts and statements of each of such persons are admissible in evidence against all of them up to the time such fraud is consummated, and the court does not err in so instructing the jury.

Commissioners' Opinion, Division No. 2.

Error from District Court, Garfield County; Charles Swindall, Judge.

Action by E. W. Smith against R. L. Hall and J. A. Murphy. Judgment for plaintiff, and defendants appeal. Affirmed.

John F. Curran and McKeever, Moore & Elam, for plaintiffs in error.

W. J. Otjen and Chalmers B. Wilson, for defendant in error.

HERR, C. The parties will be referred to herein as they appeared in the trial court. The plaintiff in error will be referred to as the defendant, and defendant in error as plaintiff.

This controversy arises out of the sale of certain oil properties in the county of Menifee, state of Kentucky. The plaintiff purchased, through the defendant and one W. L. Kendall, one-third interest in two different oil producing properties in said county and state, and agreed to and did pay therefor the sum of $5,416.66. Plaintiff contends he was induced to make said purchase by and through false and fraudulent representations made to him by defendants Hall and Murphy and one W. L. Kendall, and brings this action against defendants Hall and Murphy to recover his damages by reason of such false and fraudulent representations, which damage, he alleges, is the sum of $5,416.66, the agreed purchase price of said property.

It is contended by defendant Murphy that the petition fails to state a cause of action against him, and that the court erred in overruling his demurrer thereto. The petition sets forth, in substance: That during the month of December, 1920, and January, 1921, W. L. Kendall approached this plaintiff for the purpose of interesting him in certain oil property in the state of Kentucky, known as the Mary Davis lease; that the defendant R. L. Hall was interested in said lease, and that W. L. Kendall represented to this plaintiff that the said defendant Hall was experienced in the oil business and in handling oil properties, and that, because of the intimate acquaintance of W. L. Kendall with the said Hall, the said Hall desired to do something for him, and that he would let him in on this oil property at a very low price, and which said property would prove a paying investment for them for the balance of their lives; that through arrangements with W. L. Kendall, the plaintiff was to meet the said Kendall, defendants Hall and Murphy in the city of Tulsa, Okla., preparatory to making the trip to Kentucky to see said property; that the plaintiff and said Hall and Kendall afterwards went to Kentucky, and upon their arrival in Kentucky, said defendant Hall diverted plaintiff's attention from the Mary Davis lease and interested him in two other oil properties, one of which was known as the Five Orphans lease and the other the Jones lease, and represented to the plaintiff

that he owned a half interest in each of said leases, and that a half interest in the Jones lease could be procured for $10,000 and a half interest in the Five Orphans lease could be procured for the sum of $6,250; that there were then three producing wells on the Five Orphans lease and two producing wells on the said Jones lease, and that the said R. L. Hall represented to him that each of said wells would produce from five to six barrels per day per well, and that said wells were being produced from a shallow sand at a depth of 1,000 feet.

The said defendant Hall further represented to him he would maintain his interest in said field, and would not dispose of the same without notifying the plaintiff, and that the said defendant Hall further represented that his son, Livingston Hall, would remain in Kentucky in charge of said leases and look after the production and development thereof, and further represented that at the time there was an offset well being drilled close to the Jones lease, and that should said well come in as a producer of oil of any quantity, it would entirely prove the Jones and Five Orphans leases; that the defendant afterwards represented to this plaintiff that said well came in as a light producer, and that such representation was made prior to the closing of the transaction and was made for the purpose of inducing this plaintiff to believe that said leases had become much more valuable by reason of said offset well having come in as a light producer.

Plaintiff then alleges that all of said representations were false and fraudulent; that defendant knew the same were false and fraudulent; that they were made for the purpose of deceiving this plaintiff and that plaintiff, relying upon such representations, made the purchase hereintofore set forth, and by reason thereof he was damaged in the amount herein set out.

The allegations connecting the defendant Murphy with the said alleged fraudulent representations are as follows:

"12. Plaintiff further states that the defendant J. A. Murphy is a brother-in-law of defendant R. L. Hall. That he came to Enid on about the 6th day of April for the purpose of closing the deal already planned and arranged for by the defendants R. L. Hall and W. L. Kendall, and that he was in full possession of the facts and had knowledge of the plans of the defendants W. L. Kendall and R. L. Hall, and came prepared to aid them and assist them in carrying said plans on to completion, and that this plaintiff, together with the said defendants W. L. Ken-

dall and J. A. Murphy, met in the home of the father of J. A. Murphy in Enid, Okla., and while there the said J. A. Murphy represented that the plaintiff would be furnished with a good and sufficient assignment or conveyance of his one-third interest in and to said leases, and that said statement was made and repeated by the defendant W. L. Kendall, and the same statement and representation had previously been made by defendant R. L. Hall; and as a result of these promises and agreements this plaintiff paid to the said defendant J. A. Murphy, the sum of $2,416.66 by check delivered to defendant J. A. Murphy, and that at the same time he executed and delivered his promissory note for the sum of $3,000. That the said check was cashed and the money received upon same, and that in due course and upon maturity, the said note of $3,000 was paid, making a total sum of $5,416.66 that this plaintiff parted with by reason of the representations, statements, and agreements made to him by each of said defendants."

It is contended by defendant Murphy that these allegations do not state a cause of action against him; that the only allegation is that it was represented by the said Murphy that the plaintiff would be furnished with good and sufficient assignment or conveyance of his one-third interest in and to said leases; that there was no allegation in the petition that any request or demand was ever made on defendants for proper assignments of said lease, and, therefore, said representations could form no basis for a cause of action against the said defendant Murphy.

If this was the only allegation in the petition connecting Murphy with the transaction, the defendants' contention might be well taken. It will be observed, however, that after setting forth in the petition specific acts constituting the fraud charged against the defendants Hall and Kendall, the plaintiff, in his petition, alleges: That the defendant Murphy, being in full possession of all the facts, and having knowledge of the plans of the defendants Hall and Kendall, came to Enid on the 6th day of April for the purpose of closing the deal already planned and arranged for by the defendants Hall and Kendall, and came prepared to aid and assist them in carrying said plans on to completion, and that the said defendant Murphy, after representing that good and sufficient assignments would be delivered to plaintiff for his one-third interest in and to said leases, induced the said plaintiff to deliver to him his check for the sum of $2,416 66 and to deliver to him his note, payable to defendant Hall, in the sum of $3,000; and further alleges that this note was afterwards paid.

If, as a matter of fact, the defendant Murphy, being in possession of all the facts, with full knowledge of the alleged plans of the defendants Hall and Kendall to cheat and defraud the plaintiff in the sale of said properties, came to Enid for the purpose of assisting the defendants Hall and Kendall to close the deal, and carry out a fraud against the said plaintiff, planned by the said Hall and Kendall, he would be equally guilty with the said Hall and Kendall and equally liable with them to the plaintiff.

In volume 12, R. C. L., sec. 147, p. 400, the following rule is announced:

"On the other hand, one who acts as an agent and as a conspirator, to secure a note for stock in a corporation, is liable, though he is not an officer of the corporation. So, too, one who ratifies and makes his own the fraudulent act of another becomes liable therefor, although there was no combination or conspiracy between them. Moreover, one who, with knowledge of the facts, assists another in the perpetration of a fraud, is equally guilty."

It is true that the petition does not set forth specifically the manner in which the defendant Murphy assisted the defendants Hall and Kendall in closing the transaction, but does allege that, being in full possession of all the facts, and having knowledge of the plans of the defendants Hall and Kendall, he, the said Murphy, came to Enid to assist in closing the deal.

While these allegations are rather vague and somewhat in the nature of conclusions, yet, we think, after construing all of the allegations of the petition together and reading the petition as a whole, the said petition states a cause of action against the said defendant Murphy, good as against a general demurrer. The court committed no error in overruling the demurrer to the petition.

It is further contended by the defendant Murphy that the evidence wholly fails to establish any liability against him, and that the court therefore erred in overruling his demurrer to the evidence. We are of the opinion that there was sufficient evidence connecting the said defendant Murphy with the alleged fraud to take the case to the jury. In this particular, the plaintiff testified as follows:

"Q. Now just state what John Murphy said to you when he came over to Enid after that trip to Kentucky?

"A. We went out to Col. Murphy's, J. A. Murphy's father's house, and it was the understanding to settle this deal up. Mr. Murphy was there, Mr. J. A. Murphy, but when we came to pay for it, there was no papers or anything of the kind to be exchanged or given to us. I suggested waiting until Dr. Hall came home and let him make the transfers, proper legal transfers to us, as should be done, and there Mr. Murphy related that he was looking after things for Dr. Hall and knew the circumstances and knew that everything was all right and that it drug along long enough, and related the situation and what we were getting in on and how good it was, and he knew it was that way, and the standing of the parties interested and the people connected with it, including himself and his father.

"Q. Wait a minute. Had you known his father quite a while?

"A. Yes, sir.

"Q. Had you known John Murphy quite a while?

"A. Only just as being around town here not personally acquainted with him. * * *

"Q. State whether or not Murphy stated as to what those wells were producing?

"A. Yes, sir.

"Q. Just give the conversation regarding that.

"A. He stated that those wells were just exactly as Dr. Hall had represented them to us, that he was bookkeeper and took care of the pipe line runs and Dr. Hall's affairs in that way, and that everything was just exactly as represented to us, being such a good deal and everything of that kind that I disregarded business practices and business rule and went ahead and gave my check and note and received nothing in return for it at that time.

"Q. Were the matters discussed with Murphy as to what Hall had said in—when you were in Kentucky?

"A. Yes, sir. He stated he understood all those things and knew exactly what those leases were and what they were making and exactly what they all were.

"Q. Did you believe him at that time?

"A. I did.

"Q. I wish you would state definitely what Murphy told you at the time you closed this transaction? Repeat as nearly as you can in his own words what he said?

"A. That those wells were making four or five barrels a day per well production each day each well, that those wells were doing as the representations made to us by Dr. Hall, letting us in on something extra good, and everything of that kind, that he knew being his bookkeeper, and took care of the oil runs, and the checks that came from them, and everything of that kind, that he knew that everything was all right himself personally.

"Q. Did you believe those statements at that time?

"A. I did.

"Q. Would you have made this purchase if it had not been for those statements?

"A. No, sir."

The defendant Murphy, while denying that he represented to the plaintiff that he was bookkeeper for the defendant Hall and had charge of the runs from these wells, denied that he made the representations that said wells were producing four and five barrels per day per well, but admits making the statement and representation that plaintiff could rely implicitly upon what Hall said to him and what Hall told him.

Under this evidence an issue was created for the jury to pass upon. The jury, by its verdict, having found against the defendant Murphy, and there being sufficient evidence reasonably tending to support such verdict, this court is bound thereby.

It is further contended by both defendants that the evidence shows that the plaintiff's cause of action, if any, was barred by the statute of limitations, and that the court erred in not so advising the jury. The record discloses that the original transaction was had between the parties during the early part of January, 1921. The plaintiff alleges in his petition that the alleged fraud was not discovered until November 11, 1921. The petition was filed on November 9, 1923. The plaintiff testifies emphatically that the alleged fraud was not discovered until November 11, 1921, and this testimony is corroborated by other testimony in the case. There is, however, in the record, evidence strongly tending to support the theory that the alleged fraud was discovered by the plaintiff as early as June, 1921. There is a sharp conflict in the testimony as to when the alleged fraud was discovered. The court submitted this issue to the jury, under proper instructions.

The question as to when the alleged fraud was actually discovered by the plaintiff, under the evidence, was a question for the jury. The jury, having found against the defendants on this issue, and there being sufficient evidence to reasonably support the verdict and findings of the jury on this question, the same will not be disturbed by this court. Williamson et al. v. Oliphant, 85 Okla. 3, 204 Pac. 301; Beamer et al. v. Key et al., 114 Okla. 276, 246 Pac. 628.

The record discloses that when this action was originally filed, the plaintiff made

W. L. Kendall a party to the suit, said Kendall being a resident of Garfield county. The defendant was also a resident of Garfield county, defendant Hall being a resident of Osage county. Sometime prior to the trial of the case plaintiff dismissed his cause of action as to the defendant Kendall, and proceeded to trial as against defendants Hall and Murphy alone. Immediately upon the dismissal of said cause of action against Kendall, defendant Hall, with permission of the court, withdrew his general appearance, and entered a special appearance, filed his motion to quash and set aside the services of summons as against defendant Hall in Osage county, contending that no cause of action existed against Murphy, the remaining resident defendant, and therefore the court could acquire no jurisdiction over the person of the defendant Hall, a resident of Osage county. This motion was, by the court, overruled and defendant Hall assigns same as error. Having held that the petition states a cause of action against the defendant Murphy, and that there is sufficient evidence to support the judgment against the said defendant Murphy, it becomes unnecessary to pass upon this proposition, and is unnecessary to further discuss the same.

It is further contended by the defendant that the court erred in excluding a carbon copy of a certain letter, bearing date of September 26, 1921, after having served notice upon the plaintiff to produce the original letter. This proposition is not briefed by either party. Our attention was, however, called to the same on the oral argument of the case. There is a brief reference to this letter in the brief of both parties. The plaintiff in error refers to the excluded letter as being a certain letter bearing date of September 26, 1921, and defendant in error refers to the same in his brief as being Exhibit "K". Both parties in their brief state that the carbon copy of this letter was excluded for the reason that the plaintiff testified that he had never received such letter. Exhibit "K", however, purports to be a carbon copy of the letter dated September 26, 1921, and was read to the jury by counsel for defendants. In regard to this letter the record discloses the following:

"Q. I hand you this Exhibit 'K' and ask you if that is a carbon copy of the letter you mailed in that registered mail with these two assignments to Mr. Smith, being one-eighth of the Davis and of the Ledford?

"A. Yes, sir.

"Q. We offer that in evidence. I will read that in a minute to the jury if it is permitted. Doctor, did you get a reply to that letter?

"A. Yes, sir.

"Q. I now hand you Exhibit 'J' and ask you if that is the reply?

"A. It is. * * *

"Q. We now offer in evidence the exhibits 'K' and 'J'　(Exhibit 'K' is now read to the jury.)"

We have closely examined the record and fail to find any other letter over which there was a controversy. The copy of this letter having been read to the jury, defendants have no cause to complain.

It is finally contended by the defendants Hall and Murphy that the court erred in giving its instruction No. 10 to the jury, which instruction is as follows:

"You are further instructed that where two or more persons enter into a scheme to accomplish a common purpose as the result of which fraud and deceit, as defined in these instructions, was perpetrated upon the plaintiff, then all of the acts and statements of each of the persons entering into such combination to bring about the common result, are admissible in evidence as against all of the persons to such combination up to the time that the same is consummated, and in this case, if you find from a preponderance of the evidence that the defendants J. A. Murphy and R. L. Hall, entered into a scheme to secure from the plaintiff certain promissory notes and money, or either promissory notes or money, and to induce the plaintiff to purchase an interest in said oil and gas lease properties, in Menifee county, Ky., or either or any of said properties and to pay money or execute notes therefor, made the representations and statements complained of by the plaintiff in this action to have constituted a fraud and deceit, which induced the plaintiff to give such notes and pay money to the defendants, or either of them, then and in that event, you are instructed that all of the statements and acts of each of the defendants made or employed in furtherance of the prosecution of the common design to obtain said notes and cash from the plaintiff, are admissible in evidence as against each of the defendants. and each of them are bound thereby in so far as they contributed to the furtherance of the common design. if one you find from preponderance of the evidence, there was on the part of the defendants in bringing about such result, but in the event you fail to find from a preponderance of the evidence that there was a scheme to accomplish a common purpose as a result of which fraud and deceit was perpetrated upon said plaintiff, then and under such circum-stances, the defendants and each of them would only be bound for such statements and representations, if any, as you may find from a preponderance of the evidence were made by them, respectively, and you will not, under such circumstances, consider any statement made by any other defendant unless such defendant was present and participated in such statements or representations, which you may find from a preponderance of the evidence, were made by the defendants J. A. Murphy and R. L. Hall, or either of them to the plaintiff.

Counsel cite no authority. We fail to discover any error in this instruction.

Finding no error in the record, judgment of the trial court should be affirmed.

BENNETT, DIFFENDAFFER, JEFFREY, and HALL, Commissioners, concur.

By the Court: It is so ordered.