# GEORGE E. STARK v. EQUITABLE LIFE ASSURANCE SOCIETY OF UNITED STATES.[1]

April 14, 1939.

Nos. 32,012, 32,013.

[1]Reported in 285 N. W. 466.

*Kellogg, Morgan, Chase, Carter & Headley* and *David W. Raudenbush,* for appellant.

*W. George Hammett,* for respondent.

GALLAGHER, CHIEF JUSTICE.

The trial court overruled demurrers to complaints in two actions and in each instance, pursuant to the provisions of 2 Mason Minn. St. 1927, § 10756, certified the questions involved as important and doubtful. The appeals are from the orders overruling the demurrers. The issues being identical, only one case, No. 32,012, is considered.

In substance, the amended complaint alleges that defendant is a corporation licensed to transact an insurance business in the state of Minnesota; that under date of August 19, 1926, defendant, in consideration of stated premiums, issued to plaintiff its policy of life insurance in the sum of $2,500, which policy provided that if plaintiff became wholly and permanently disabled before reaching the age of 60 years defendant would waive subsequent premiums and pay to him a disability annuity of $25 per month during said total and permanent disability; that said policy and contract of insurance stated and provided as follows, to-wit:

"It is not necessary to employ any person, firm or corporation to collect the insurance or secure any of the benefits under this policy. Write direct to the Society, 393 Seventh Avenue, New York, or communicate with the nearest authorized agent of the society whose duty is to facilitate all settlements without charge."

Said complaint further alleges that plaintiff at all times mentioned was unable to read and write intelligently, is a man of limited business experience and generally illiterate, which facts have at all times been known to defendant and its agent at Felton, Minnesota; that on or about October 13, 1926, and while said policy

and contract of insurance was in full force and effect and while plaintiff was less than 60 years of age, he became totally and permanently disabled physically by reason of bodily disease and thereupon and continuously since that time has been totally and permanently disabled physically to such an extent as to render him wholly and permanently unable to engage in any occupation or perform any work of any kind for compensation or of financial value; that on or about the 13th day of October, 1926, and while said policy was in full force and effect and plaintiff was less than 60 years of age, he duly notified defendant through its duly appointed agent at Felton, Minnesota, of his total and permanent disability and demanded benefits under and in accordance with the terms of said policy; that defendant and its agent then and there represented to plaintiff that he had no claim for benefits under said policy of insurance for the reason that said disability did not confine him to his bed and refused further to consider said claim and demand; that defendant's agent at Felton, Minnesota, for some years prior to October 13, 1926, had been employed and engaged in a lumberyard at that place and that plaintiff and said agent had for a long time been close friends and business acquaintances; that because thereof plaintiff had great respect for said agent and had implicit trust and confidence in him; that the statements and representations above set forth were made by defendant and its agent knowing the same to be false and with the intention that plaintiff would believe the same and act thereon; that plaintiff, having implicit trust and confidence in defendant's agent, believed his representations to be true and acted thereon to his damage in that he concluded that he had no valid claim for benefits under said policy and permitted said policy to lapse for the reason that he was no longer able to earn money with which to pay the premiums thereon by reason of his total, continuous, and permanent disability; that thereafter and during the summer of 1935 plaintiff was informed by another insurance agent that he undoubtedly had a good claim under said policy, assuming he had suffered the disability which he related to said agent; that the information obtained from said agent as to his rights under said policy was the first time plaintiff

discovered the fraud which defendant had perpetrated upon him in the fall of 1926 through its agent; that thereafter and during 1936 plaintiff again notified defendant of his claim and at the special instance and request of defendant submitted proof of said disability as required by said policy; that defendant has waived the requirements of said policy as to due proof and disability and has waived the requirements and necessity of any other and further proof and notice of such disability other than that furnished by plaintiff; that under the conditions and circumstances set forth defendant was obliged to waive any premium or premiums which should occur after the disability and notice and that defendant was estopped from asserting or claiming that due proof was not duly and seasonably presented in accordance with the terms of the policy; that after receipt of due notice and proof defendant again denied liability and refused to pay the amount due to plaintiff's damage in the sum of $3,000 with interest and refused to reinstate the policy in accordance with its terms. Judgment was prayed for in the amount which would have accrued to plaintiff had he been found disabled in 1926 and reinstatement of the policy demanded.

Defendant demurred generally upon the ground that the complaint does not state facts sufficient to constitute a cause of action. Upon this demurrer the order appealed from was entered. Appellant contends that the trial court erred in overruling its demurrer for the reasons (1) That the amended complaint fails to state a cause of action since the misrepresentation relied upon is one of law and not of fact; and (2) because the complaint fails properly to negative the bar of the statute of limitations.

■ By its demurrer defendant admits that its agent represented to plaintiff that he had no claim for benefits against defendant under the policy in question for the reason that his disability did not confine him to his bed. It also admits that such representation was false. A demurrer admits all the material facts well pleaded in the pleading to which it is directed. 5 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 7542. It also admits all necessary inferences or conclusions of law, whether stated or not, which follow from

facts well pleaded.   Harriet State Bank v. Samels, 164 Minn. 265, 204 N. W. 938.

The defendant contends that the misrepresentation alleged by the plaintiff was one of law as distinguished from fact and that it cannot be held legally responsible therefor.   We concede the existence of the general rule in civil actions that a misrepresentation as to a matter of law does not constitute remedial or actionable fraud. Jaggar v. Winslow, 30 Minn. 263, 15 N. W. 242; Valley v. Crookston Lbr. Co. 128 Minn. 387, 151 N. W. 137; Miller v. Osterlund, 154 Minn. 495, 191 N. W. 919; 26 C. J. p. 1207, § 106; First Nat. Bank v. Schirmer, 134 Minn. 387, 159 N. W. 800; Pieh v. Flitton, 170 Minn. 29, 211 N. W. 964; 14 Am. & Eng. Enc. of Law (2 ed.) 54; Upton v. Tribilcock, 91 U. S. 45, 23 L. ed. 203; Coddington v. P. & G. R. Co. 103 U. S. 409, 26 L. ed. 400; Mutual L. Ins. Co. v. Phinney, 178 U. S. 327, 20 S. Ct. 906, 44 L. ed. 1088; Security Sav. Bank v. Kellems (Mo. App.) 274 S. W. 112; Burns v. Mills, 82 Ind. App. 621, 147 N. E. 300; Gormely v. Gymnastic Assn. 55 Wis. 350, 13 N. W. 242; Easton-Taylor Trust Co. v. Loker (Mo. App.) 205 S. W. 87; 12 R. C. L. p. 295.

This dogma seems to have been carried into the civil from the criminal law and to rest upon the unreal assumption that everyone knows the law.   Often the rationale is dignified by a Latin garb and reads, *"Ignorantia legis neminem excusat,"* which simply means, "Ignorance of the law excuses no one."   That this court will not accept the maxim blindly is indicated by the case of Peterson v. First Nat. Bank, 162 Minn. 369, 375, 203 N. W. 53, 55, 42 A. L. R. 1185, where in relieving a party from a serious mistake of law on the part of his own attorney, the court said:

"The idea that equity has no relief from mistakes of law had its origin in the almost humorous and wholly supposititious presumption that all know the law—a proposition contrary to both law and sense.   There has been misuse also of the rule that ignorance of the law excuses no one.   There is such a rule, but it goes only to the extent of making legal duty inescapable because of the subject's ignorance of the law.   Neither in letter, spirit nor purpose does it

justify or even suggest that a loss should be imposed on one and an unconscionable gain permitted another merely because of the former's ignorance of law."

Misrepresentations of law are treated as are misrepresentations of fact in at least two types of cases: (a) Those in which the person misrepresenting the law is learned in the field and has taken advantage of the solicited confidence of the party defrauded, and (b) those in which the person misrepresenting the law stands with reference to the person imposed upon in a fiduciary or other similar relation of trust and confidence. See Restatement, Torts, § 545(2), and comment.

Numerous decisions illustrate the application of the first of these exceptions. Releases from liability under insurance policies have been frequently set aside on the ground that an insurance adjuster had obtained the release from an ignorant and trusting person by false representations of law. Berry v. Am. Cent. Ins. Co. 132 N. Y. 49, 30 N. E. 254, 28 A. S. R. 548; Hudson v. Glens Falls Ins. Co. 218 N. Y. 133, 112 N. E. 728, L. R. A. 1917A, 482; Titus v. Rochester German Ins. Co. 97 Ky. 567, 31 S. W. 127, 28 L. R. A. 478, 53 A. S. R. 426; Garsee v. Indemnity Ins. Co. (Tex. Civ. App.) 47 S. W. (2d) 654. See also Sanford v. Royal Ins. Co. 11 Wash. 653, 40 P. 609.

In Order of U. C. T. v. McAdam (8 Cir.) 125 F. 358, representatives of a mutual insurance company went to the widow of a deceased member at a time when she was inexperienced and ill and represented that the company was not liable under a policy but offered to give her an amount less than she was entitled to thereunder in exchange for a release. These representatives were all businessmen, and one of them was a friend of her deceased husband. It was held that under the circumstances the release could be set aside for fraud.

In Madison Trust Co. v. Helleckson, 216 Wis. 443, 257 N. W. 691, 96 A. L. R. 992, and note, the same result was reached upon a showing that the agent who obtained the release was an attorney at law—this notwithstanding the fact that the plaintiff had con-

sulted with her own attorney on the matter. Other relevant cases include: White v. Harrigan, 77 Okl. 123, 186 P. 224, 9 A. L. R. 1041; Schneider v. Schneider, 125 Iowa, 1, 98 N. W. 159; Allison v. Wm. Doerflinger Co. 208 Wis. 206, 242 N. W. 558; Olston v. Oregon W. P. & Ry. Co. 52 Or. 343, 96 P. 1095, 97 P. 538, 20 L.R.A. (N.S.) 915; Ellis v. Gordon, 202 Wis. 134, 231 N. W. 585; Security Sav. Bank v. Kellems (Mo. App.) 274 S. W. 112; Ramey v. Allison, 64 Tex. 697; Jekshewitz v. Groswald, 265 Mass. 413, 417, 164 N. E. 609, 62 A. L. R. 525.

Our own court has not been unmindful of the propriety of considering disparity of learning in determining whether or not fraud can be predicated on misrepresentations of law. In Colby v. Life Ind. & Inv. Co. 57 Minn. 510, 59 N. W. 539, 542, this court said at p. 516:

"The disparity of the parties must also be borne in mind. Ordinary men are not usually acquainted with all the intricacies of insurance contracts, while the insurer is presumed to be an expert on the subject; and it is a matter of common knowledge that the insured are accustomed to rely largely on the insurer for information as to their rights and liabilities."

It is clear that the allegations of the complaint bring the instant case within the first exception to the general rule. For reasons which will later become apparent, we consider the applicability of the second exception previously referred to.

The proposition that fraud may be predicated on misrepresentations of law made by a person standing in a fiduciary or other similar relation of trust or confidence to the person deceived has been accepted by this court. In Colby v. Life Ind. & Inv. Co. *supra,* where it was held that an agent of a mutual insurance company stands in a fiduciary relation to an insured member, it was said [57 Minn. 516]:

"We recognize that the general rule is that, as between parties bearing no fiduciary relation to each other, a mere misrepresentation of law by one party, or a mere mistake of law by the other party, is no ground for relief. * * * and it is a familiar prin-

ciple that, when the contracting parties bear a fiduciary relation to each other, a misrepresentation as to the law of the contract may be a ground for relief."

See also Pieh v. Flitton, 170 Minn. 29, 211 N. W. 964; State v. Edwards, 178 Minn. 446, 227 N. W. 495, 65 A. L. R. 1253.

Whether or not the allegations of the complaint are sufficient to make out a confidential or fiduciary relation between the parties is a somewhat troublesome question. No case strictly in point having come to our attention, it becomes necessary to refer to the language used by the courts in similar cases. In Miranovitz v. Gee, 163 Wis. 246, 157 N. W. 790, 792, an adequate expression of the nature of the relation is to be found at p. 252, where the Wisconsin court said:

"A fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal. Hensan v. Cooksey, 237 Ill. 620, 86 N. E. 1107, 127 Am. St. Rep. 345; Beach v. Wilton, 244 Ill. 413, 91 N. E. 492; Beare v. Wright, 14 N. D. 26, 103 N. W. 632, 69 L. R. A. 409, 8 Ann. Cas. 1057."

The allegation that the plaintiff had been for a long time acquainted with defendant's agent and that he had faith and confidence in him would not, in our opinion, be sufficient to establish this relation. He should know that the insurance agent was representing adverse interests. Ordway v. Continental Ins. Co. 35 Mo. App. 426; Aetna Ins. Co. v. Reed, 33 Ohio St. 283. We note, however, that the complaint alleges an additional and important fact. There is pleaded a provision of the policy whereby the insured is advised not to employ counsel but rather to seek the assistance of agents of the defendant in settling claims arising under the contract.

When an insurance company sees fit in the administration of its business to take its policyholders into its confidence to the extent of: (1) Advising them that it is not necessary to employ counsel to collect the insurance or secure any of the benefits under the policy, and (2) inviting them to communicate with the company or its

agent whose duty is to facilitate all settlements without charge, it solicits a relationship which is somewhat different than that which ordinarily exists between insurer and insured. Having graciously offered to furnish advice and information, it is under an assumed duty not to deceive those who seek the opinions which it has professed itself competent to give.

Apart from this provision, the insurance company was under no obligation to inform the insured of his legal rights under the contract. Of its own volition it chose to encourage his confidence that such information would be, if applied for, honestly and fairly furnished. Having done so, it cannot be heard to say that the insured was overly gullible in assuming that the invitation was made in good faith. And where, as here, the insured takes the invitation at its face value and relies upon the integrity of the insurance company and its agent, a relationship of trust and confidence within the meaning of the definition previously quoted is established.

It matters little whether or not we regard the insurance company as a fiduciary in the strict sense of that term. For present purposes the result is the same. According to the complaint, defendant induced plaintiff to rely upon its superior knowledge and represented to him that it was not liable under the provisions of the policy covering total and permanent disability because the insured was not confined to his bed. The insurer and its agent must be presumed to have known the falsity of this representation. Berry v. Am. Cent. Ins. Co. *supra;* Sanford v. Royal Ins. Co. *supra.* The insured, naïve and illiterate, accepted these assertions, abided by the false advice which he had reason to expect was true, and was thus led to surrender valuable legal rights. If the averments of the complaint are proved, a case of fraud and injustice will be manifest.

We conclude therefore that the facts alleged bring the instant case within both of the exceptions to the general rule. The pleading is sufficient as against the demurrer insofar as it is based on the theory that fraud cannot be predicated on misrepresentations of law.

■ Defendant's second contention is that on the face of the complaint it conclusively appears that plaintiff's cause of action is barred by the statute of limitations. The complaint alleges the perpetration of the fraud in 1926 and its discovery by defendant in 1935. It contains no allegation indicating the exercise of any specific acts of diligence that might have hastened the discovery of the fraud. Any inferences that might be drawn from the alleged facts that plaintiff was, at all times after October, 1926, totally and permanently disabled, was unable to read and write intelligently, and was a man of limited business experience and generally illiterate, are more properly considered as excuses for failure to exercise diligence than as allegations of acts of diligence.

In an action for fraud brought more than six years after the fraudulent acts relied upon, it is necessary for plaintiff to allege in his complaint that he did not discover the fraud until within six years before the commencement of the action, and if he fails to do so the complaint is subject to general demurrer. Humphrey v. Carpenter, 39 Minn. 115, 39 N. W. 67; Burk v. Western Land Assn. 40 Minn. 506, 42 N. W. 479. Plaintiff did allege that he did not discover the fraud until 1935 and also alleged the circumstances under which he made the discovery. To this extent the rule was complied with. If no more is required the complaint is sufficient.

Defendant contends, however, that it was not sufficient for plaintiff merely to allege that he did not discover the fraud until 1935 but that it was also necessary for him to allege facts showing that he could not earlier have discovered the fraud if he used reasonable diligence. It relies on such cases as Morrill v. Little Falls Mfg. Co. 53 Minn. 371, 55 N. W. 547, 21 L. R. A. 174; Duxbury v. Boice, 70 Minn. 113, 72 N. W. 838; First Nat. Bank v. Strait, 71 Minn. 69, 73 N. W. 645; Whitcomb v. Wright, 176 Minn. 274, 223 N. W. 294; Kuhlman v. Baker, 50 Tex. 630; Boren v. Boren, 38 Tex. Civ. App. 139, 85 S. W. 48; Provident Saving L. Assur. Soc. v. Withers, 132 Ky. 541, 116 S. W. 350; Simmons v. Western Life Ind. Co. 171 Iowa, 429, 154 N. W. 166

To determine the validity of this contention we must ascertain the implications of 2 Mason Minn. St. 1927, § 9191(6), which provides:

"The following actions shall be commenced within six years: * * *

"6. For relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

To learn what constitutes "a discovery of the facts constituting the fraud" reference must be had to the principles of equity in which this provision had its origin, and which the legislature must be presumed to have had in mind when it enacted the statute. The rule in equity was that while relief for fraud would be granted regardless of the lapse of time if the party defrauded was ignorant of the deception, laches would bar a plaintiff who either knew or in the exercise of reasonable diligence should have known that he had been duped. This principle was embodied in the English statute of 3 & 4 Wm. IV, c. 27 (§ 26), which provided:

The cause of action is "deemed to have first accrued at and not before the time at which such fraud shall or with reasonable diligence might have been first known or discovered."

Mr. Justice Mitchell, speaking for the court in the leading case of Duxbury v. Boice, 70 Minn. 113, 72 N. W. 838, 839, after referring to the historical matters mentioned above, said at p. 120:

"Some of our American statutes contain the same or similar language, while others like our own merely provide that the cause of action shall not be deemed to have accrued (for the purposes of this limitation) until the discovery of the facts constituting the fraud. But in every instance, so far as we are aware, the courts have construed such statutes in accordance with the equity rule, and hold, without reference to the particular language used, that the means of discovery are equivalent to actual discovery, and that a party must be deemed to have discovered the fraud when, in the exercise of proper diligence, he could and ought to have discovered it. That was the construction put upon our own statute by this

court in Board v. Smith, 22 Minn. 97. Among the numerous cases to the same effect are Fritschler v. Koehler, 83 Ky. 78; Norris v. Haggin (C. C.) 28 Fed. 275; Wood v. Carpenter, 101 U. S. 135, 139, 25 L. ed. 807; and Parker v. Kuhn, 21 Neb. 413, 32 N. W. 74, 59 Am. R. 838."

No case from this jurisdiction has been called to our attention which holds that a complaint which states the time when the fraud was discovered is demurrable for failure to negative lack of due diligence in discovering the fraud sooner. Other courts, however, have held that the reasonable diligence which according to the Duxbury case must be proved must also be pleaded to immunize a complaint to demurrer. In Wood v. Carpenter, 101 U. S. 135, 139, cited in the above quotation, the United States Supreme Court was called upon to consider the meaning of the phrase "after the discovery of the cause of action" on an appeal from an order sustaining a demurrer. It held that a party seeking to avoid the bar of the statute on account of fraud must both aver and show that he used due diligence to detect it. Accord: Crawford v. Crawford, 134 Ga. 114, 67 S. E. 673, 28 L.R.A. (N.S.) 353, 19 Ann. Cas. 932.

Decisions to the contrary are premised upon an interpretation of the pertinent section of the statute of limitations which is radically different from the one adopted in this state. See Zieverink v. Kemper, 50 Ohio St. 208, 34 N. E. 250; Stearns v. Hochbrunn, 24 Wash. 206, 64 P. 165; Alexander v. Cleland, 13 N. M. 524, 86 P. 425; see also K. P. Ry. Co. v. McCormick, 20 Kan. 107. The theory of these cases is that the reasonable diligence qualification found in 3 & 4 Wm. IV, c. 27 (§ 26), is not to be found in the statute of that jurisdiction and therefore, applying the language of their statute literally, the bar is properly pleaded by an averment that the fraud was not discovered until a time within the period without setting out reasons why it could not have been discovered sooner. If we were to adopt the conclusion which these cases support, it is obvious that the complaint in the instant case would not be demurrable. But it is unnecessary for us so to do, since under either theory the complaint must be held to be sufficient.

As we have said, diligence in attempting to discover fraud is required under our statute because of principles of equity established prior to its adoption. By a parity of reasoning, the application of the requirement of due diligence should be limited to the field fixed by the decisions of the equity courts which developed the general rule. And at equity diligence was not required if the defrauding party stood in a fiduciary or other relation of trust and confidence to the party defrauded. See Banning, Limitation of Actions (3 ed.) p. 224, where it is said:

"In some cases, the fraud is itself the cause of action; ※ ※ ※ And in ※ ※ ※ these ※ ※ ※ cases, the time commences to run only as from the date of the discovery of the fraud,—or (where the defendant is not in any fiduciary or *quasi*-fiduciary relation to the plaintiff) as from the date when the fraud might with reasonable diligence have been discovered; but if the defendant is in a fiduciary or *quasi*-fiduciary relation, it is not competent, ※ ※ ※ for him to impute to the plaintiff that the plaintiff has been wanting in diligence."

See also Crawford v. Crawford, *supra,* at p. 123; Lataillade v. Orena, 91 Cal. 565, 578, 27 P. 924, 25 A. S. R. 219; Williamson v. Oliphant, 85 Okl. 3, 5, 204 P. 301.

We have previously held that the allegations of the complaint established, for present purposes, a fiduciary or other similar relation of trust and confidence as between the parties. Since under such circumstances it is unnecessary to prove diligence in discovering the fraud, it is unnecessary to plead it. Therefore the demurrer was properly overruled.

Affirmed.

Mr. Justice Hilton, incapacitated by illness, took no part.