FRANCES C. LEIER AND ANOTHER v. TWIN CITIES AREA METROPOLITAN TRANSIT COMMISSION.

216 N. W. 2d 129.

March 22, 1974—No. 44179.

*Sheridan J. Buckley, Jr.,* for appellants.

*Richard G. Spicer* and *Jerome H. Lewis,* for respondent.

PETERSON, JUSTICE.

Plaintiff Frances C. Leier sued defendant, Twin Cities Area Metropolitan Transit Commission (MTC), for personal injuries allegedly sustained by her while riding as a passenger on an MTC bus negligently operated by an MTC employee.[1] MTC is the governing body of the transit area which is a public corporation and political subdivision of the state. Minn. St. 473A.05, subd. 7(a). The accident occurred on February 28, 1971; formal notice of plaintiff's claim was received by MTC on May 7, 1971; and her action was commenced on September 30, 1971.

The notice-of-claim statute, § 466.05, requires that notice of claim must be presented to the governing body of the municipality within 30 days after the injury, except that this time for giving notice does not include the time, not exceeding 90 days, during which the person injured is incapacitated by the injury from giving the notice. Summary judgment was entered against plaintiff on the ground that her notice of claim, which was given more than 30 days from the date of the injury, was not timely.

The undisputed factual situation giving rise to this recurring

---

[1] Plaintiff's husband, Joseph J. Leier, is a plaintiff with respect to medical expenses incurred in the treatment of his wife's injuries. This opinion refers only to his wife as plaintiff since any rights he may have are derivative from hers.

issue of timely notice is unusual. MTC has a full-time claims department, presumably much like that which existed before MTC acquired the facilities and personnel of the private Twin Cities Lines, Inc. An identified claims adjuster had a telephone conversation with plaintiff, a 71-year-old woman, on March 2, 1971, 2 days after the accident. The claims adjuster made an electronic recording of the conversation which contains the pertinent details of the time, place, and circumstances of the accident and plaintiff's resulting personal injuries. The claims adjuster, in the course of the conversation, instructed plaintiff as to the manner and time limitations for filing claims. The claims adjuster sent a transcribed copy of the conversation to plaintiff 2 days later, together with an instruction sheet for filing a claim. Plaintiff thereafter did send a letter notice of claim which was received on May 7, 1971, more than 30 days after the accident occurred, plaintiff laboring under the mistaken belief that the applicable time limitation was 90 days, not 30 days.

Our disposition of the issue turns upon one additional fact. The claims adjuster, in the course of the telephone conversation with plaintiff, advised her that she should not get an attorney and should let the MTC claims department handle the claim. MTC, in authorizing its claims adjuster to advise potential claimants of their rights and obligations, must assume the risk that its adjuster may give mistaken advice upon which a claimant may rely to his or her detriment. The risk here was that plaintiff would be discouraged from obtaining the advice and assistance of an attorney. It seems fair to assume that an attorney having the same information as claimant had would have attended to a timely filing of the required notice. We therefore hold that in this unique situation defendant MTC is estopped from invoking the strict application of the 30-day limitation of the statute. MTC, of course, was in possession of all of the relevant information concerning the claim within 2 days after the acci-

dent, so that the basic purposes of the notice-of-claim statute are not significantly impaired by this holding.[2]

This application of the principle of estoppel is not wholly without precedent. Stark v. Equitable Life Assur. Soc. 205 Minn. 138, 285 N. W. 466 (1939), similarly involved a situation where one party discouraged the other party, notwithstanding the adverseness of their positions, from obtaining outside counsel and assistance—and with similar result. There, an insured under a life insurance policy which provided for waiver of premiums and an annuity in the event of total disability failed to assert the waiver and permitted the policy to lapse, relying upon the advice of the insurer's local agent that, since the insured was not confined to bed, he had no claim. A fact relevant to the insured's subsequent action for fraud, which avoided application of the pertinent statute of limitations, was a provision in the insurance policy advising the insured that (205 Minn. 139, 285 N. W. 467) "[i]t is not necessary to employ any person, firm or corporation to collect the insurance or secure any of the benefits under this policy" and that the insured should instead "communicate with the nearest authorized agent of the society whose duty is to facilitate all settlements without charge." Addressing the issue of whether, by reason of that particular provision, there was a form of confidential or fiduciary relationship upon which the claimant insured justifiably could rely, we said (205 Minn. 145, 285 N. W. 470) :

"When an insurance company sees fit in the administration of its business to take its policyholders into its confidence to the extent of: (1) Advising them that it is not necessary to employ counsel to collect the insurance or secure any of the benefits under the policy, and (2) inviting them to communicate with

---

[2] We do not, however, intimate that the unlogged investigative report was a notice to the governing body of MTC or that the claims adjuster was a responsible official reasonably likely to place the notice before the governing body. Cf. Seifert v. City of Minneapolis, 298 Minn. 35, 213 N. W. 2d 605 (1973).

the company or its agent whose duty is to facilitate all settlements without charge, it solicits a relationship which is somewhat different than that which ordinarily exists between insurer and insured. Having graciously offered to furnish advice and information, it is under an assumed duty not to deceive those who seek the opinions which it has professed itself competent to give."

Other dissimilarities aside, this equitable result with respect to a private contractual relationship surely is no less applicable to the even more severe statutory limitations involving an injured citizen and her government.

Reversed.