# JAMES EDGAR WHITCOMB AND ANOTHER v. VERNON A. WRIGHT AND OTHERS.[1]

January 25, 1929.

No. 27,043.

[1]Reported in 223 N. W. 294.

*Eriksson & Zumwinkle* and *Harold Ranstad,* for appellants.

*N. F. Field, Cyrus A. Field* and *Junell, Dorsey, Oakley & Driscoll,* for respondents.

STONE, J.

Appeal by plaintiffs from orders sustaining special and general demurrers to their complaint.

Plaintiffs are husband and wife. It will serve convenience to refer to James Edgar Whitcomb as the only plaintiff. Construing the complaint liberally, its purpose is to annul a trust deed wherein defendants Vernon A. and C. R. Wright are the trustees. The other defendants are joined because with plaintiff they are beneficiaries of the trust. Plaintiff is the son of Silas Whitcomb and his wife, Carrie A. Whitcomb. Silas died in 1868. Thereafter the mother married George B. Wright; so plaintiff became his stepson. Defendant Vernon A. Wright is the son of George B. Wright by an earlier marriage and the stepson of plaintiff's mother, who will hereinafter be referred to as Carrie A. Wright. George B. Wright died in 1882. By a deed dated and acknowledged June 18, 1903, while she was a widow, Carrie A. Wright transferred to Charles D. Wright and Vernon A. Wright, the latter one of the present defendants, a large amount of real and personal property. The transfer was of nearly if not quite all the grantor's estate in trust for certain carefully stated purposes which need not be detailed. The trust continues in existence, though much of the original property has been converted into other forms by the trustees. The trust purposes have not been accomplished. Defendant C. R. Wright has succeeded Charles D. Wright as a trustee. The demurrers are based in the main upon the proposition that no cause of action is stated,

the bar of the statute of limitations and the alleged laches of plaintiff being principally urged.

■  The annulment of the deed of trust of June, 1903, is sought upon the ground of fraud practiced upon plaintiff's mother, the grantor.  The allegations of fraud need not be considered at all in detail.  If fraud was practiced it was upon the grantor and none other.  The property she transferred was her property.  If it was gotten from her by fraud or other actionable wrong, the resulting cause of action accrued in her favor.  She did not depart this life until July 1, 1926, some 23 years after her execution and delivery of the trust deed.

Such a cause of action as that now under consideration, although it may seek in whole or in part to recover real property or an interest therein, is an action for relief on the ground of fraud within G. S. 1923, § 9191(6), rather than one "for the recovery of real estate, or the possession thereof," under § 9187.  McMillan v. Cheeney, 30 Minn. 519, 16 N. W. 404; Brasie v. Minneapolis Brg. Co. 87 Minn. 456, 92 N. W. 340, 67 L. R. A. 865, 94 A. S. R. 709.  In consequence, the cause of action accrues upon "the discovery by the aggrieved party of the facts constituting the fraud" [§ 9191(6)]. The present complaint is barren of anything to suggest that, if there was fraud as claimed by plaintiff, Carrie A. Wright was not charged with knowledge of it immediately.  In the absence of allegations of her nondiscovery of the supposed fraud, the cause of action in favor of Carrie A. Wright, the grantor in the trust deed of June 18, 1903, must be considered as having become barred by the statute of limitations in six years, or on June 18, 1909.  As already stated, she lived until July 1, 1926.  Paraphrasing but slightly the language of McMillan v. Cheeney, 30 Minn. 519, 16 N. W. 404, plaintiff's right of action, as the complaint presents it, accrued to his mother, Carrie A. Wright, during her life and immediately upon the perpetration of the fraud in 1903.  The right of action, as pleaded, appears therefore to have been barred before her death, which occurred some 23 years after that time.

■  Furthermore, so far as plaintiff seeks to reach property which was his mother's he sues as one of her heirs at law.  He alleges

that she died testate. Therefore the learned trial judge was right in observing that the complaint, if it states any cause of action, shows one in favor not of plaintiff or any other heir at law of Carrie A. Wright, deceased, but rather and only one in favor of her executor or her legatees and devisees. Nothing is pleaded to show that her will was not operative and would not control the disposition of her property if the trust in which this action seems to find most of it were annulled by decree and because of fraud in its creation.

■ The complaint may attempt to reach property acquired by plaintiff through inheritance from his father, Silas Whitcomb, who died in 1868. Again without going into much detail, the claim on that phase of the case is that plaintiff has been deprived of property and that such property (or its proceeds) is now in the hands of the defendant trustees. There are allegations of a confidential relationship between Silas Whitcomb and George B. Wright, and between plaintiff, his mother, and George B. Wright and the defendant Vernon A. Wright. It is alleged that plaintiff's inheritance passed into the management of George B. Wright, who was the administrator in Minnesota of the estate of Silas Whitcomb and also the guardian of the person and estate of plaintiff. He alleges that George B. Wright never filed or procured the settlement of his final account as guardian and was never discharged as such. Nobody was ever appointed in his place. Plaintiff avers that for a long time he was "incompetent to transact his own affairs, and said incompetent condition" continued until 1915. But it is alleged that in 1884 and 1887 powers of attorney to James W. Griffin were procured from plaintiff; that Griffin was a tool of the Wrights, particularly defendant Vernon A.; and "by the use of said power of attorney, all of the property of this plaintiff [with an exception now insignificant] had by 1903, been conveyed to plaintiff's mother." It must rest on implication that it was included by her in the trust deed of 1903 and so conveyed to her trustees.

Much stress is placed upon confidential relationship as one means by which it is supposed that plaintiff has been deprived of his inheritance. Emphasis is also put upon his alleged incompetence.

But the complaint does not show the nature or duration of that incompetence. It does not show when or how plaintiff discovered that fraud had been perpetrated upon him, nor why it was not known before. Therefore if we indulge the too liberal assumption that the pleading is otherwise sufficient as to the loss of his inheritance, it remains open to the objection that any such cause of action he might have had, so far as now appears, has been barred by the statute of limitations. If he ever had a cause of action, it must have accrued much more than six years before the commencement of this suit in April of 1928. And the complaint fails utterly to allege whether plaintiff discovered it within six years previous to commencing the action and if so, why he was not chargeable with notice of it earlier. Morrill v. Little Falls Mfg. Co. 53 Minn. 371, 55 N. W. 547, 21 L. R. A. 174; Duxbury v. Boice, 70 Minn. 113, 72 N. W. 838.

■ Entirely aside from the bar of the statute of limitations but with the same effect, there is that of laches, of which, on his own pleading, plaintiff appears to have been guilty. His cause of action, as to the property inherited from his father, accrued long before 1903—just when, we cannot make out. Plaintiff's delay in asserting his rights is fatal in the absence of excusable ignorance, and the complaint comes nowhere near pleading that excuse within the rule of Hardt v. Heidweyer, 152 U. S. 547, 14 S. Ct. 671, 38 L. ed. 548, followed here in Sweet v. Lowry, 131 Minn. 109, 154 N. W. 793.

Equity aids the diligent—not the negligent—and is opposed to stale claims. It does not permit a party by his own laches to prolong the time within which he may apply for relief. The means of knowledge are equivalent to actual knowledge; and knowledge of facts that would have put an ordinarily prudent man upon an inquiry which, followed up, would have disclosed the fraud, is equivalent to actual discovery. Hence, entirely aside from the statute of limitations and under the equitable doctrine of laches, "the burden was on the plaintiff not merely to prove that he did not, in fact, discover the fraud until within a reasonable time before he filed his bill, but also to show by the facts and circumstances connected

with the fraud and its discovery that his failure to discover it sooner was consistent with reasonable diligence on his part, and not the result of his own negligence." Duxbury v. Boice, 70 Minn. 113, 120, 72 N. W. 838, 839. The allegations necessary to admit proof to enable plaintiff to meet that burden are absent, and so the complaint is bad on this ground alone.

In passing, we note the argument for plaintiff that he is a beneficiary of the trust and so has a right to have it terminated when its purposes are fulfilled. It is our opinion that the argument is untenable. There is no effort to have the trust deed reformed, and nothing is pleaded which shows that its objects have been accomplished or that it is subject to termination under the terms of the instrument creating it. The complaint is bottomed exclusively upon the alleged fraud inducing the execution of the trust deed. That is too clear to permit now a widely variant construction. "A complaint should proceed upon a distinct and definite theory. It would violate all rules of pleading to permit a complaint to be construed as best suited the exigencies of the case; to allow such a course of procedure would produce uncertainty and confusion, and materially trench upon the right of the defendant to be informed of the issue he is required to meet." C. St. L. & P. R. Co. v. Bills, 104 Ind. 13, 16, 3 N. E. 611, quoted with approval in Dunnell, Minn. Pl. (1 ed.) § 281, and in Sorenson v. School District No. 28, 122 Minn. 59, 141 N. W. 1105.

Orders affirmed.