**STRAUSS et al. v. UNITED STATES FIDEL-
ITY & GUARANTY CO.**

No. 3340.

Circuit Court of Appeals, Fourth Circuit.

Jan. 11, 1933.

Rehearing Denied Feb. 8, 1933.

R. D. Epps, of Sumter, S. C. (R. O. Purdy, of Sumter, S. C., and Thomas M. Stubbs, of Atlanta, Ga., on the brief), for appellants.

Irvine F. Belser, of Columbia, S. C. (Melton & Belser, of Columbia, S. C., and Shep-

ard K. Nash, of Sumter, S. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and PAUL, District Judge.

SOPER, Circuit Judge.

United States Fidelity & Guaranty Company, a Maryland corporation, complainant in a suit in equity in the District Court, was awarded a decree for $9,054.32, against the defendants below who had been directors of the Sumter Trust Company, a South Carolina corporation. The Guaranty Company had issued its bonds to secure the faithful performance by the Trust Company of its duties as trustee under a will, and had made good a loss suffered by the trust estate at the hands of the trustee. The suit was brought by the Guaranty Company, relying on the equitable principle of subrogation, against the directors, charging them with participation in the acts and omissions through which the loss occurred. The following facts were found by the special master, to whom the case was referred, and his findings were approved by the District Judge:

The Trust Company, on January 6, 1917, in certain proceedings in the court of common pleas for Sumter county, S. C., had been substituted as trustee for an individual trustee, to whom A. J. China, late of Sumter county, deceased, by his last will, had given and devised in trust, real and personal property in excess of $30,000. The will provided that the trustee should collect the income from the property and, after first paying all the fixed charges and expenses, should pay over the net income in equal shares to his three daughters for life; and upon the death of each daughter, one-third part of the estate was given, devised, and bequeathed unto her children, in equal shares. The trustee was given power to sell or dispose of any of the trust property, and to invest the proceeds under the terms and limitations of the will. The decree of the court of common pleas provided that the corpus of the trust estate should be paid and delivered to the Trust Company in equal shares, to be held by it under the trusts set forth in the will; and that the Trust Company, as trustee, should furnish a bond for each of the shares in the sum of $5,000. The trust property was accordingly turned over, and the bonds were furnished on April 5, 1917, with the Guaranty Company, the complainant, as surety. The Trust Company became insolvent and closed its doors on February 17, 1927, and receivers were appointed; and after the closing, new trustees were appointed for the trust estates, who made demand upon the Guaranty Company to make good the cash balances due by the Trust Company to the trust estates. They amounted to $11,103.19, and this sum was paid by the Guaranty Company to the new trustees on May 1, 1927. Subsequently, between June 1, 1928, and January 1, 1931, the Guaranty Company was paid various amounts by the receivers of the Trust Company, leaving the balance, including interest, for which the decree of the District Court was given.

The gist of the complaint was that substantial sums of money, belonging to the trust estates, were not invested by the Trust Company, as trustee, in available safe investments, but were deposited in the Trust Company as a bank, where they were intermingled with other trust funds, and with commercial deposits, and used in the ordinary commercial banking business of the company. This condition prevailed throughout the period of the company's trusteeship, and between 1918 and 1927, the aggregate funds on deposit belonging to the three parts of the trust estate were never less than $11,103.19, the balance when the Trust Company closed its doors. No investment of the funds in one part of the estate was made after January 21, 1922, when the balance was $2,800, increasing to $3,533.85 at the end; or in a second part after March 19, 1924, when they were $2,859.69, increasing to $4,032.39 at the end; or in a third part after January 1, 1925, when they amounted to $2,739.73, increasing to $3,703.33 at the date of closing. During the period from 1922 to 1927, the average amount of trust funds belonging to various trust estates, which remained uninvested in the hands of the Trust Company, was $253,278.18, and constituted a large part of the total deposits. For example, at the close of business June 21, 1921, deposits subject to check were $290,068.82, saving deposits $81,735.65, time certificates $78,419.75, and trust funds, $224,737.24. The rate of interest paid trust funds varied from 4 to 7 per cent., the latter amount being paid on the funds of the China estate. Commissions were charged on these trust funds on the basis of 10 per cent. on the income collected, including the interest received by the Trust Company, as trustee, from itself as well as from other sources. No security was given for the safe custody of the trust funds.

The directors had full knowledge of the manner in which the business was carried on, and particularly of the fact that the Trust Company kept on hand uninvested, substantial sums of money belonging to the trust es-

tate, and intermingled them with its general banking deposits. The balances due the various estates, of which the Trust Company was trustee, were carried on a book known as the trust ledger, and were kept separately from the general deposits in so far as the book entries were concerned. Daily statements, showing the amount of these balances, under an item entitled "trust funds," were submitted to the directors at their weekly meetings. The affairs of the Trust Company were subject to periodic examination by the state bank examiner of South Carolina, and this official, in his reports on November 24, 1925, June 1, 1926, and October 26, 1926, raised serious doubts as to the value of the Trust Company's assets and its ultimate solvency. The trust officer of the company and one of the defending directors was personally interested in a trust fund of $27,000 in cash held by the bank and kept on deposit in the bank for some years before the failure. In January, 1927, after an ineffectual attempt by the trust officer and his brother to withdraw the money by check, the Trust Company turned over to them certain assets of the bank as security, with the approval of the board of directors.

The District Court, in its opinion,[1] made the following comment on the conduct of the defendant directors: "The admitted conduct of the defendants here amounts in effect to their lending these trust funds to their own corporation for its own uses, and that without any specific security whatsoever. The situation is aggravated by the fact that the defendants allowed these funds to be used in their company's business and to remain uninvested over long periods of years, and after the condition of the company was being severely criticized by the bank examiner's department, and the solvency of the company was becoming more and more doubtful, and further by the fact that during the past few weeks of the company's operation, the defendants had specific securities set aside for the protection of certain funds in which they or some of them were personally interested. Such conduct seems to this court to be in violation of the very first principles of the handling of trust funds." We are in full accord with this conclusion; for the findings of fact of the trial court disclose not merely a violation of the general rule that a trustee must not mingle the trust funds with his own, but also a failure to exercise ordinary care in the selection of a safe depository for the moneys of the estate. The special master,

who heard the evidence, had previously found that the handling of the trust funds involved in this case was not such as would commend itself to reasonably safe and prudent business men in the performance of the terms of the trust, and that since the directors knew or should have known that the general assets of the Trust Company included a large amount which were under criticism as of doubtful value for some time before the Trust Company closed, they were chargeable with negligence in the handling of the funds. The District Judge confirmed this finding, holding that as the defendants had actually served as directors, each of them was guilty of negligence.

The District Judge, in his opinion, placed considerable emphasis upon the rule established in South Carolina and elsewhere, that a trustee shall not lend the trust funds to himself or use them in his own business; and if he does so, he cannot escape liability for any loss that may ensue even though he may be able to show that he acted in the best of faith. Spear v. Spear, 9 Rich. Eq. 184; Mulligan v. Wallace, 3 Rich. Eq. (24 S. C. Eq. 45) 111; Pope v. Mathews, 18 S. C. 444. The defendants infer from these observations that the District Judge found no evidence of neglect on their part and fixed liability upon them solely upon the theory that it was a wrong in itself, irrespective of considerations of good faith or negligence, for the Trust Company, as trustee, to deposit the funds in its own bank; and they contend that under the statute law of South Carolina, in force at the time, no legal wrong was involved in such action. They point out that under South Carolina decisions, e. g., Twitty v. Houser, 7 S. C. 153, and Crane v. Moses, 13 S. C. 561, a trustee may deposit trust funds in a safe bank without personal liability to make good the loss if the bank should fail; and hence they make the contention that there was no basis for the adverse decree. This argument ignores the positive finding of the special master, affirmed by the District Judge, that it was culpable neglect on the part of the defendants to keep the funds uninvested for a long period, subject to the risks of the business of the bank, and to retain them on deposit even when it was known that the financial condition of the bank was no longer sound. Even if the Trust Company was in a different class from an individual trustee, under the law of South Carolina, as to the mingling of trust funds with its own, it cannot be supposed that its obligation, as trustee, to exercise due care, was diminished. In determining whether this duty was properly

---

[1] Not for publication.

performed, one of the most significant circumstances was the fact that the Trust Company retained the funds on deposit in order to use them for its own profit; and when the added fact is considered that the funds were retained after the directors knew that the bank was unsafe, their neglect becomes too clear to admit of denial. It is no answer to say that the amount of the trust funds on deposit was so large when the precarious condition of the institution became known to the directors, that a withdrawal of them would have wrecked the bank. This very fact is the strongest evidence of neglect, for it showed that the defendants, moved by their own interests as directors of the bank, had so bound up the affairs of the trust estates committed to their care with the private business of the bank that they could not be disengaged with safety.

In Winn v. Harby, 159 S. C. 257, 156 S. E. 767, 769, the Supreme Court of South Carolina was passing upon a provision of the act of the General Assembly of South Carolina of 1911 (Civil Code of 1932, §§ 7864–7867), which enabled a bank to become an executor or trustee in the same manner as an individual. The act provided that the capital stock of a banking corporation, acting as trustee, with the liability of the stockholders thereunder, should be taken as security for the faithful performance of its duties. The court held that this enactment provided for additional security on the bond of the trustee and said: "We find nothing in the statutes, even by implication, which would tend to show that the General Assembly ever intended to relieve a corporation, acting as guardian, administrator, executor, or trustee, or the officers and directors of such corporation, from losses occurring because of its or their negligence, mismanagement, or fraudulent acts in the hands of the trust estate."

We think also that the facts of the case permit the application of the salutary rule that if a trustee mingles trust funds with his own, and the mingling is followed by loss, accidentally or otherwise, he must make it good. 3 Pomeroy's Eq. (4th Ed.) 1079; 26 R. C. L. 1322. We are told that although this rule was generally observed elsewhere, it was not in effect in South Carolina under the act of 1911 as to banks and trust companies acting as trustees. This act was referred to by the Supreme Court of South Carolina in the case of Ex parte Michie, 167 S. C. 1, 165 S. E. 359, and this decision is cited as showing that the general rule applicable to the trustees

was relaxed by the statute in South Carolina as to state banks and trust companies, so as to legalize the course of conduct pursued by the Trust Company in this case. We do not so understand the decision. The bank in that case qualified as executor of Michie's estate on June 6, 1928, and transferred a sum of money standing in the name of Michie on its books to its own name as trustee. It had a year under the South Carolina statutes to settle and distribute the estate, but it became insolvent and closed its doors on October 30, 1928. The court held that as executor of the estate, the bank had the right to keep on hand funds necessary to defray current expenses of the estate and preferred claims, and that the estate was not entitled to a preferred claim upon the assets of the insolvent bank on the ground that the bank had received the funds in trust and committed a breach of trust by mingling them with its own funds.

The court was intent upon showing that under the circumstances before it, the trust estate was not entitled to a preference, even under the rule prevailing in South Carolina. The great weight of authority is that a misappropriation of trust funds does not of itself entitle the cestui que trust to a preference over the creditors of an insolvent trustee, unless it is shown that the estate from which the preferential payment is sought has been increased by the wrongful misappropriation. Ellerbe v. Studebaker Corporation (C. C. A.) 21 F.(2d) 993; 26 R. C. L. 1348, 1354–1356. In South Carolina, however, this rule is not approved and it is considered more in keeping with equity and justice to accord a preference to the cestui que trust if it can be shown that the funds were handled in such manner by the trustee as to amount to a fraud on its part. See Ex parte Bank of Aynor, 144 S. C. 147, 142 S. E. 239. The court was of the opinion in the Michie Case that the facts did not disclose any element of bad faith or moral wrong which would create a trust ex maleficio merely because of the transfer of the funds already on deposit in the bank, and the retention of them in its general funds for the short period preceding its insolvency.

In the course of the argument, reference was made by the court to the act of the General Assembly of South Carolina, approved March 28, 1930, Code of 1932, §§ 7905 to 7910, which undertook to regulate with some particularity the actions of state banks, trust companies, and fiduciary corporations doing a trust business. By the act, these institutions

were subjected to examination by the state banking department, and it was required, amongst other things, that all estates held in a fiduciary capacity should be segregated; that funds awaiting investment, if deposited in the trustee's own bank or any other bank, should be secured; that such funds should be invested as soon as practicable and that the investment of each individual trust should be kept separate and distinct from all other trusts. From the absence of similar definite provisions in the act of 1911, it was inferred that the Legislature recognized the right of a financial institution, acting as trustee, to deposit funds in its own bank; but this is the utmost extent to which the opinion goes. It is far from holding that while the act of 1911 was in effect, a trust company, acting in a fiduciary capacity, could keep trust funds in a general deposit in its own bank for a long period, without liability for losses occurring in the course of the business of the institution. No one would suppose from reading the earlier act that it was intended to repeal the time honored rules governing the discharge of a trustee's duties which the courts of South Carolina have promulgated for the protection of trust estates. It does not follow from the imposition of specific duties upon trustees by the act of 1930 that no similar obligations derived from the common law were effective at an earlier date; for declaratory statutes for the guidance of the business world are not uncommon. Beneficiaries of trust estates have been afforded a greater protection under the rules enunciated by the Supreme Court of South Carolina than they enjoy in most jurisdictions; and it is not reasonable to conclude that the act of 1911 will be interpreted so as to relieve corporate trustees from a strict accountability for the property committed to their custody.

■■ Moreover, it is important to remember that the Supreme Court was dealing in the Michie Case only with the relative rights of the beneficiaries of trust estates and the general creditors of an insolvent trustee. The question now under discussion is the liability of a corporate trustee, under the act of 1911, which mingled trust funds with its own and lost them, to make good the loss, even in the absence of fraud or negligence. We think that we are acting in harmony with the law of South Carolina when we hold that the Sumter Trust Company was subject to such a liability in this case. The directors of the Trust Company are likewise liable, for all persons who knowingly participate and aid in any violation of duty laid by equity upon a trustee, are equally liable with the trustee to respond to the liabilities which arise therefrom. 3 Pomeroy Eq. (4th Ed.) § 1079; Duckett v. Nat. Mech. Bank, 86 Md. 400, 38 A. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513; Peruvian Guano Corp. v. Thompson, 112 S. C. 377, 99 S. E. 808; Fant v. Brissey, 150 S. C. 15, 147 S. E. 632; Winn v. Harby, 159 S. C. 257, 156 S. E. 767.

■ The appellants also make the objection that the bonding company should not be allowed to recover in this case because it knew or should have known how the trust funds were being handled, from the annual reports which the trustee made to the probate court as required by the statutes of South Carolina, section 9047 of the Civil Code of 1932, and yet made no complaint to the trustee. There is obviously no merit in this point. It is enough to say here that the bonding company had in fact no knowledge of these reports and no legal obligation to inform itself in regard to them.

■ It is also contended that the Guaranty Company, having accepted dividends from the receiver of the bank, paid in part out of funds collected from the shareholders on account of their extra shareholders' liability, is estopped from pressing the present suit against the directors. The reason alleged is that the claim of the trust estate, as a depositor of the bank, is inconsistent with the claim against the directors, based upon the liability of the bank as trustee. We see no inconsistency in these positions. Unquestionably the trustee had deposited trust funds in the bank and the substituted trustee was entitled, as a depositor, to share with others in the assets of the bank, including the moneys collected from the shareholders. The substituted trustee was also entitled to bring suit against the Trust Company and its directors for the amount of the loss, because the Trust Company was not merely a depositor but a trustee which had lost funds by mingling them with its own. The remedies are not inconsistent, but they are concurrent, and consistent, and both may be pursued until satisfaction is made. See 20 Corpus Juris 8 and cases cited in note 65 (a). Moreover, it has been decided by the Supreme Court of South Carolina in Winn v. Harby, 159 S. C. 257, 156 S. E. 767, in a similar case to this involving the same bank, that the right of a trust estate to share in the proceeds of the stockholders' liability is a remedy afforded by the South Carolina law, additional to the right of action against the directors of the bank for negligent mismanagement.

Finally, it is said that a suit in equity is not the proper procedure in this case because the defendants were charged with negligence and an action at law for damages sounding in tort would have furnished an adequate remedy. There was neglect by the trustee and its directors in this case, as we have shown, but it does not follow that there is no jurisdiction in equity. A similar point was fully discussed and a decision in favor of the jurisdiction of equity was made in Safe Deposit & Trust Company v. Cahn, 102 Md. 530, 536, 542, 62 A. 819. A suit to establish a trust is peculiarly within the domain of equity; and in one aspect, this case is a suit to impress with a trust the funds which were on deposit with the Trust Company as a bank and which it received with full knowledge of their fiduciary character. When there has been a breach of trust, whether willful, fraudulent, or through negligence, the liability of the trustee to make compensation for the loss may ordinarily be enforced by a suit in equity. Pomeroy on Equity, §§ 1079, 1080, 1053. The liability of the defendant directors is founded on the fact that they did not direct the business of the corporation so that a breach of trust would not have occurred, but on the contrary, they participated in the dereliction, and are personally responsible therefor. Virginia-Carolina Chemical Co. v. Ehrich (D. C.) 230 F. 1005, 1012; Virginia-Carolina Chemical Co. v. Floyd, 158 N. C. 455, 74 S. E. 465; Emerson v. Gaither, 103 Md. 564, 64 A. 26, 8 L. R. A. (N. S.) 738, 7 Ann. Cas. 1114; Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667. The present objection was not raised in the answer of the defendants, and indeed was not broached until the case was peremptorily called for trial two years after the institution of the suit. Under these circumstances, we think there was no abuse of the discretion of the District Judge in refusing to transfer the case to the law docket, even if we assume that there was an adequate remedy at law. The objection that the bill does not make a case cognizable in a court of equity does not go to its jurisdiction as a federal court. Lack of jurisdiction may be ignored by the court in cases where the subject matter of the suit is of a class of which the court has jurisdiction; and where the defendant has expressly consented to action by the court, or has failed to object seasonably the objection will be treated as waived. Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763; Southern Pacific R. Co. v. United States, 200 U. S. 341, 26 S. Ct. 296, 50 L. Ed. 507.

The decree of the District Court is affirmed.

### On Motion for Rehearing.

Since the argument in this case, our attention has been called to the recent decision of the Supreme Court in Schoenthal v. Irving Trust Company, 53 S. Ct. 50, 77 L. Ed. ——, wherein it was held that an application to transfer a suit from the equity to the law side of a federal court was not too late if brought on for hearing before the commencement of the term. The suit was instituted by a trustee in bankruptcy to recover ascertained sums of money paid by way of preference by the bankrupt to the defendants, and no facts calling for equitable relief were disclosed. The answer denied the assertion in the bill that the plaintiff had no remedy in law, and there was no subsequent act or omission of the defendant inconsistent with this denial. So it was held that it was error on the part of the trial court to refuse to transfer the case from the equity to the law docket. The Supreme Court nevertheless reaffirmed the rule that the right of the defendant to a transfer of a suit in equity to the law side of the court, where there is an adequate remedy at law, may be waived, citing Reynes v. Dumont, 130 U. S. 354, 395, 9 S. Ct. 486, 497, 32 L. Ed. 934; American Mills Co. v. American Surety Co., 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306. In Reynes v. Dumont, the approved practice is thus described: "The rule as stated in Daniell's Chancery Practice, (vol. 1, p. 555, 4th Amer. Ed.,) is that if the objection of want of jurisdiction in equity is not taken in proper time, namely, before the defendant enters into his defense at large, the court having the general jurisdiction will exercise it; and in a note on page 550 many cases are cited to establish that 'if a defendant in a suit in equity answers and submits to the jurisdiction of the court, it is too late for him to object that the plaintiff has a plain and adequate remedy at law. This objection should be taken at the earliest opportunity. The above rule must be taken with the qualification that it is competent for the court to grant the relief sought, and that it has jurisdiction of the subject-matter.' "

The equitable character of the relief sought in the pending case, the omission in the answer of the respondents of objection to the trial of the suit in equity, and their failure to make timely application for the transfer of the case to the law docket, constitute circumstances which bring the case well within the rule above set out; and the motion for rehearing is therefore denied.