## CHERRY et al. v. HOWELL et al.
### No. 231.

Circuit Court of Appeals, Second Circuit.
Sept. 12, 1933.

Ernst, Fox & Cane, of New York City (Jerome Michael and Pincus Berner, both of New York City, of counsel), for appellants.

Harper & Matthews, of New York City (Harold Harper, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This suit was begun in the Supreme Court of the State of New York, County of Queens, and removed into the court below. The plaintiffs are two out of a large number of persons who own class D bonds of Southern Guarantee Loan Company, a Georgia investment corporation. The named defendants are two of the corporation's directors who held office during the years in which occurred the transactions complained of. Only Clark Howell was served. The suit was originally instituted as an action at law brought on behalf of the plaintiffs and all other holders of the corporation's class D bonds. Judge Campbell dismissed the complaint on the ground that it stated a cause of action for fraud and deceit practised upon the class D bondholders individually, and that a class action would not lie. Leave was granted the plaintiffs to amend. Pursuant thereto, they filed an amended complaint which they contend states a class action in equity. A motion to dismiss the amended complaint came on before Judge Byers, who apparently held that the amendment merely stated more elaborately the same facts which Judge Campbell had held insufficient in dismissing the original complaint. An order was entered dismissing the amended complaint with leave to file "a second amended complaint within the purview of the said opinion" of Judge Campbell. (D. C.) 4 F. Supp. 597. Thereafter the suit was transferred from the law side to the equity side of the court, and, no further amendment being made, the decree of dismissal was entered which is now before us on appeal.

The amended complaint purports to set forth five causes of action, all of which are brought by the plaintiffs on behalf of all class D bondholders. Briefly summarized, the important allegations of the first count set forth the following: Until April 1, 1929, Southern Guarantee Loan Company was engaged in the business of issuing to the investing public its interest-bearing installment bonds on a monthly payment plan, and of investing the funds thus derived. On that date it ceased business and applied to a Georgia court for dissolution and the appointment of a receiver. It had outstanding a series of class D $600 ten-year bonds upon which the holders thereof, several hundred in number, had paid $5 monthly installments aggregating more than $1,000,000. During the years 1920 and 1922 two of such bonds were issued to plaintiff Cherry and 12 to plaintiff Smith, and each had paid the required installments up to April 1, 1929. By the terms of class D bonds, out of each $5 monthly installment, the company was obligated to apply $2 to the reserve fund and $2 to the redemption fund. It is charged that these sums, aggregating 80 per cent. of the total amount paid in on class D bonds, were paid to and received by the company in trust to be held for the uses and purposes stated in the bonds, but that the company in violation of its trust and of the statutes of Georgia failed to establish and maintain such reserve and redemption funds, and that the defendants and other officers and directors of the company knowingly "permitted and caused" such breaches of trust by the corporation. It is also averred that had such reserve and redemption funds been established and maintained, they would have constituted security for the payment of class D bonds, but the defendants negligently permitted and caused the owners of class D bonds to lose such security, and that nothing has been or will be distributed to them, since the company's assets in the receivership do not exceed the claims of secured creditors and the costs of the receivership. It is alleged that the company is indebted to class D bondholders in the aggregate amount paid in by them with interest, that the matters involved in this suit are of common interest to all class D bondholders, that it is brought to avoid a multiplicity of suits, and that the class D bondholders, including the plaintiffs, are without an adequate remedy at law. There are also allegations that at all times between April 1, 1919, and its cessation of business the corporation was insolvent as the defendants well knew, and that, with their connivance, it never complied with any of the statutory provisions relating to investment companies.

Each subsequent count of the amended complaint incorporates everything alleged before. The second count adds an averment that the defendants knowingly permitted and caused the corporation illegally to dissipate the moneys paid to it in trust by class D

bondholders by using the same to pay bonds of other classes and other obligations of the company.

The third count alleges that prior to April 1, 1919, the company had gone through the form of establishing a redemption fund and a reserve fund, but the defendants knew that they had not been established or maintained, and that it was not intended to establish or maintain them, as required by the term of class D bonds. The contents of the funds as they existed on April 1, 1929, are set forth, and it is charged that the defendants permitted and caused the securities carried in these funds to be carried on the company's books at inflated values. With knowledge of these conditions the defendants permitted the company to collect over $1,000,000 from class D bondholders.

The fourth count alleges that the defendants knowingly permitted and caused the company to represent to the investing public that it was solvent, and was maintaining the redemption and reserve funds as required, and that such representations were false and fraudulent, and were innocently relied upon by the plaintiffs and other class D bondholders in subscribing for their bonds and paying installments thereon aggregating more than $1,000.000.

The fifth count adds allegations of conspiracy by the defendants to do the things of which the plaintiffs complained in the prior counts.

The prayer for relief asks an accounting by the defendants for the moneys paid to the company by class D bondholders between April 1, 1919, and April 1, 1929, which should have been held in trust in the redemption and reserve funds but were diverted therefrom, and for other appropriate relief.

▮ The appellants assert that the amendments transformed the original complaint from a suit at law into a suit in equity and that the first three counts state equitable causes of suit "for participation in a breach of trust and for equitable fraud." If they do, so also did the original complaint. There is no material difference between the original and the amended complaints in this respect. It is argued by the appellee that Judge Campbell's decision was a holding that the complaint alleged no valid cause of action either at law or in equity, and that this ruling became the law of the case and requires an affirmance of Judge Byers' dismissal whatever the views of this court as to the sufficiency of the pleading. This contention can-

not be sustained. Commercial Union v. Anglo-South Am. Bank, 10 F.(2d) 937 (C. C. A. 2), upon which the appellee relies, stands for no such doctrine. There it was held that after one district judge had sustained a complaint as sufficient, it was error for a second district judge to dismiss the complaint as insufficient. The situation at bar is very different. When Judge Campbell considered the complaint, the suit was pending on the law side of the court, no motion was made to transfer it to the equity side, and, so far as appears from Judge Campbell's opinion, the question whether the pleading presented an equitable cause of suit was not considered. It may, therefore, well be thought that Judge Byers was free to exercise an independent judgment on this question. But if Judge Campbell's decision were given the scope which the appellee ascribes to it, then Judge Byers followed it; he did not commit the error of overruling the decision of a judge of co-ordinate jurisdiction. The rule that this may not be done does not deprive the party aggrieved of his right to review a wrong ruling because it is a repetition of a previous erroneous decision of another judge in the same case. The effect of the rule is to leave the litigants in the same situation in which they would have been if the judge who rendered the first decision had also made the ruling which followed it. Plattner Implement Co. v. Int. Harvester Co., 133 F. 376, 379 (C. C. A. 8). The question is therefore before us whether the amended complaint was sufficient as a bill in equity.

The appellants now concede that the fifth cause of action, charging a conspiracy, adds nothing to the legal force and effect of the prior counts. Howland v. Corn, 232 F. 35, 40 (C. C. A. 2). They also concede that the fourth count states only a legal cause of action for fraud and deceit.

▮ It is improper in a federal court to join in one suit legal and equitable causes of action. Twist v. Prairie Oil & Gas Co., 274 U. S. 684, 687, 47 S. Ct. 755, 71 L. Ed. 1297; Cherokee Nation v. Southern Kansas Ry. Co., 135 U. S. 641, 651, 10 S. Ct. 965, 34 L. Ed. 295; Buzard v. Houston, 119 U. S. 347, 7 S. Ct. 249, 30 L. Ed. 451. One of the grounds relied upon in the motion to dismiss was misjoinder of causes of action, but this was not the ground upon which the motion was granted. Were we to sustain the dismissal upon the ground of misjoinder, we think the decree would have to be modified so that it could not stand as a bar to filing a new suit in equity, assuming that an equitable cause of

suit would lie upon the facts disclosed. See Rogers v. Durant, 106 U. S. 644, 1 S. Ct. 623, 27 L. Ed. 303.

The theory of the first and second counts is that $4 out of each $5 paid to the company by class D bondholders was paid in trust to be held in the redemption and reserve funds for the security of the bonds, that the company committed a breach of trust by diverting the trust property to other purposes, and that its directors are liable in equity to the bondholders because they permitted and caused the company to commit its breach of trust. We shall assume for purposes of the demurrer that the terms of class D bonds impose upon the corporations trust obligations rather than merely contractual obligations with respect to the money to be applied to and held in the redemption and reserve funds. Cf. Wilson v. Lord Bury (1880) 5 Q. B. D. 518. The plaintiffs contend that where a corporation holding property in trust has made an improper use of the trust property, the corporate officers who knowingly participated in the trustee's violation of duty may be held jointly and severally liable, equally with the trustee, to make good the default, even though none of the misappropriated trust property inured to the personal benefit of the officers. See Walker v. Howell, 209 Iowa, 823, 226 N. W. 85; Dollar v. Lockney Supply Co. (Tex. Civ. App.) 164 S. W. 1076; Sweet v. Montpelier Sav. Bank & Trust Co., 69 Kan. 641, 77 P. 538; Vujacich v. So. Commercial Co., 21 Cal. App. 439, 132 P. 80; Virginia-Carolina Chemical Co. v. Floyd, 158 N. C. 455, 74 S. E. 465; Virginia-Carolina Chemical Co. v. Ehrich (D. C.) 230 F. 1005; Strauss v. U. S. Fidelity & Guaranty Co., 63 F.(2d) 174 (C. C. A. 4); Participation in a Breach of Trust, 34 Harv. L. R. 454. The defendant does not dispute the asserted principle, but contends that in the case of an active trust no such liability can be enforced except in a suit to which the trustee is a party, either as plaintiff or defendant. Thus the dispute is narrowed to the issue whether under the circumstances alleged in the amended complaint the trustee, Southern Guarantee Loan Company, is a necessary party.

■■ The wrong alleged is the misappropriation by the trustee, with the defendant's participation, of money which was to be held in trust for the purposes specified in class D bonds for the redemption and reserve funds. In other words, the wrong was a depletion of a trust fund, and the liability which resulted was to replenish the fund so that it might continue to be held upon the trusts specified. When a cestui que trust sues to have restored to the trust fund money which he claims to have been wrongfully diverted, the trustee must be a party because any recovery will be for the benefit of the trust estate as such and not for the benefit of the plaintiff personally. See Whitcomb v. Wright, 176 Minn. 274, 223 N. W. 294; Western R. R. Co. v. Nolan, 48 N. Y. 513, 518; Morgan v. Kansas Pac. Ry. Co., 15 F. 55 (C. C. S. D. N. Y.); Brown v. Orr, 112 Pa. 233, 3 A. 817. The appellants concede that this is true where the trust is to continue, but argue that here the trust has been terminated because the corporation announced that it would accept no further installment payments after April 1, 1929, petitioned for dissolution, and is in default in the payment of class D bonds. These facts do not, in our opinion, negative the necessity of having the trustee a party to this proceeding to restore the wasted trust funds. The recovery which is sought from the defendant will not be solely for the benefit of the plaintiffs, or of the plaintiffs and such other bondholders as may join with them. Bondholders who do not come in as parties to this proceeding may have rights superior to the plaintiffs' which the trustee could, and should, assert in their behalf.

The bonds provide in paragraph 3 of "Conditions": "The owner of any bond in good standing upon which twelve monthly instalments have been duly paid may, however, at any time upon thirty days' written notice to the home office of the Company and surrender of said bond, withdraw that portion of his instalments applied to the reserve fund with six per cent per annum interest upon the same, without payment of any exchange fee." Paragraph 4 declares: "Whenever withdrawals or surrenders in any month equal the proportion of current installment payments applied to the redemption fund for said month, payment of withdrawals and surrenders may be suspended, being paid in order of application from the redemption funds received in the succeeding months; but no further installments shall be required or fines charged against bonds formally filed with the home office for withdrawal or surrender." Paragraph 5 provides: "The redemption fund shall be used, first, for the payment of withdrawal and cash surrender values, but any idle funds accumulated in the redemption fund which are not required for the payment of withdrawals or cash surrender values or of bonds at maturity, may be applied in the discretion of said Company, to the redemption of bonds whose earnings and order entitle

them to redemption prior to maturity, as hereinbefore provided. The reserve fund shall be invested for the protection of all live outstanding bonds, each application from every installment being so used and held as long as the bond represented by such installment is a liability against the Company."

Under these complicated provisions it would seem that there may be bondholders who have attempted to surrender their bonds and obtain a withdrawal from the reserve fund, and others who may be entitled to prior payment out of the redemption fund, whose rights may be superior to those of the plaintiffs in the trust funds as replenished by recovery from the defendant. Consequently the plaintiffs are not entitled to have the recovery forthwith paid over to them in the proportion that their bonds bear to all outstanding class D bonds, but an accounting is required between the trustee and all class D bondholders before it can be determined how much a particular bondholder should receive. If so, it seems obvious that the recovery is for the benefit of the trust estate as such and that the trustee is a necessary party. Nothing is alleged to indicate that it would be impossible to acquire jurisdiction of the trustee and the defendant directors in a single suit brought in the state of the corporation's domicil.

Most of the authorities upon which the appellants rely in arguing that the trustee is not a necessary party are cases where a bailee of the plaintiff's property, or its proceeds, was guilty of converting it with the connivance of the bailee's officers, and the suit was an action at law for conversion. In such cases a trust fund is involved only in the sense that the property bailed, or its proceeds, is held in trust for the plaintiff who is entitled to immediate possession. None of the authorities cited is in point in a situation like the one at bar where a complicated accounting is required between the trustee and numerous cestuis, some of whom may have rights superior to the rights of the plaintiffs. In Walker v. Howell, 209 Iowa, 823, 226 N. W. 85, which is strongly relied upon, it appears that collateral deposited as security for debenture bonds was misappropriated by the pledgees (trustees) with the connivance of the mortgagor's officers. The mortgage had been foreclosed and a deficiency judgment secured in favor of the debenture bondholders. Some of them then brought suit against the officers and one of the trustees to recover for the misappropriated collateral. It was held that the corporate mortgagor was not a necessary party. It is to be observed that the mortgagor was not one of the trustees and that no accounting was sought against it by the plaintiffs. In Slater Trust Co. v. Randolph-Macon Coal Co., 166 F. 171 (C. C. S. D. N. Y.), also relied upon, the trustee was joined but a demurrer by it was sustained. Whether the trustee should not have been retained as a party may be doubted in view of the relief sought, which was to compel the defendants to deliver substitute security to the trustee; but in any event no accounting was required between the trustee and the bondholders because the substitute security was apparently to be held by the trustee and was not to be paid forthwith to the bondholders, as the present plaintiffs desire.

As to the third count of the amended complaint, which alleges that there are certain securities, though overvalued, in the redemption and reserve funds, the necessity for an accounting is even more apparent than in the first and second counts, where it is alleged that the entire trust fund was misappropriated.

On the ground that the trustee was a necessary party to the equitable causes of suit alleged in the amended complaint, the decree of dismissal is affirmed.